Railroad Company *v.* Lahr.

## LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* LAHR.

| 2pi 335 |
| 3pi 398 |

### (*Nashville.* February 4th, 1888.)

1. MASTER AND SERVANT. *Fellow-servant. Personal negligence of superior.*

The master is not responsible for mere *personal* negligence of a superior, causing injury to an inferior fellow-servant. In order to render the master liable for the consequences of the superior servant's negligence, the latter must so far stand in the place of the master as to be charged, in the particular matter from which the injury results to the inferior servant, with the performance of some duty which, under the law, the master owes to such servant.

Cases cited and approved: Railroad *v.* Handman, 13 Lea, 423; Railroad *v.* Wheless, 10 Lea, 741; Fox *v.* Sanford, 4 Sneed, 36; Railroad *v.* Elliott, 1 Cold., 611; Railroad *v.* Rush, 15 Lea, 151; Railroad *v.* Bowler, 9 Heis., 866; Railroad *v.* Collins, 85 Tenn., 227.

2. SAME. *Same. Same. Case in judgment.*

Plaintiff was injured by a fall from a railroad trestle while in defendant's employ. He was working on the trestle under a foreman. Desiring to descend from an upper to a lower bent of the trestle, he caught a hanging rope, which the foreman by mistake informed him was fastened above, and proceeded to let himself down. The rope was not fastened, and he fell to the ground. This rope was used to lower tools. There were other ropes, which the hands were accustomed to use to descend. There was no proof that plaintiff was ordered to descend, or that the foreman knew he intended to do so, or that any duty was assumed by or imposed upon the foreman to provide safe means of descent by the ropes.

*Held:* That the accident resulted from *personal* negligence of the foreman, for which the master is not liable, and that the Court should have stated in his charge the distinction between *personal* and *official* negligence of a superior servant.

---

### FROM ROBERTSON.

---

Appeal in error from the Circuit Court of Robertson County. JO. C. STARK, J.

Action by J. M. Lahr against the Louisville & Nashville Railroad Company for personal injuries received by him while in its employ. Judgment below for $4,500 in favor of plaintiff. Defendant appealed.

J. W. JUDD for Railroad Company.

JOHN E. & A. E. GARNER for Lahr.

LURTON, J. The appellee was one of a gang of carpenters in the employment of the appellant, and sustained an injury while engaged in repairing a high railway trestle, through the alleged negligence of one B. F. Ligon, a fellow-servant, who was foreman of the gang.

The proof shows that the lower bents, upon which work was being done, were held in position by means of guy ropes, securely fastened to the top of the trestle, and that the workmen were accustomed to descend by means of these guy ropes from the upper to the lower bents. It also appears that there was a long rope, partly lying in a coil, upon the top of the trestle, and that one end of this rope hung down below the top of the trestle; but whether the loose end reached the ground does not clearly appear. This loose rope was used as a means of lowering tools to the men at work upon the lower bents. There had been no change in the position or fastening of these ropes between the time of the accident and the beginning of the work that morning.

Railroad Company v. Lahr.

The statement of Lahr is, that having finished the particular work upon which he was engaged, on one of the upper bents, and just a few feet below the top of the trestle, and intending to go down to a lower bent for the purpose of aiding a fellow-workman who was engaged upon the lower bent, he says that he caught hold of this loose rope, and, jerking it, said to Ligon, who was on top of the trestle, and just over him, "Is this rope fastened?" and that Ligon replied, "Yes." That thereupon he handed his hammer up to Ligon, that it might be lowered to him when he had reached his place, and, taking hold of the rope, threw himself off of the bent upon which he was standing, and was precipitated a distance of over forty feet to the ground below, the rope upon which he undertook to descend, as before stated, not being fastened, but lying in a loose coil upon the top of the trestle.

There is no proof that he undertook to make this descent in obedience to any immediate order of his superior, and none that Ligon had any knowledge that it was his purpose to so descend. When Lahr handed his hammer up to Ligon, he did not tell him that he was going down, but, on the contrary, Ligon says that he supposed that he was coming up; that having finished what he had to do upon the upper bent, his duty was to return to the top.

There is no proof as to whether Ligon was charged with any duty concerning the descent of

the men to the lower bents, and none that he undertook to look to the fastening of the ropes, or the use of the ropes as a means of descent. The primary use of the fastened ropes was that they might serve as guy ropes, and from all that appears, the use of these guy ropes, as a means of descent, was optional with the men.

Certainly the record is silent as to any duty, imposed upon, or assumed by Ligon, to provide means of safe descent.

Ligon says that the rope that Lahr had hold of at the time he asked if the rope was fastened, was one of the guy ropes; but as the evidence upon this fact is conflicting, we shall assume that Ligon was himself mistaken as to the rope Lahr asked him about.

The inquiry was a natural one for Lahr to make, but it was one which he might and doubtless would have made of any one near enough to examine and see.

This brings us to a consideration of the question as to whether the Railroad Company is responsible under these facts for the consequences of the mistake made by Ligon.

"In this State," says Judge Cooper, in delivering the opinion of this Court in the case of *Railroad* v. *Handman*, "we have adopted the general rule established by the authorities regulating the relative rights of master and servant. The servant, on entering into service, knows, or is taken to know, that there are extraordinary dangers, in-

separable from such service, which human care and foresight cannot always guard against. If he voluntarily engages to serve, in view of all the hazards to which he will be exposed, it is well settled that, as between himself and his employer, he undertakes to run all the ordinary risks of the service, *and this includes the risk of injuries not only from his own want of· skill and care, but likewise the risk of injuries from the negligence of his fellow-servants.*" 13 Lea, 425.

This rule has been steadily adhered to in the decisions of this Court since the case of *Fox* v. *Sandford,* 4 Sneed, 36. The difficulty has rather been to determine who are fellow-servants within the meaning of the rule. Upon full consideration of the question, it has long been determined that employes engaged in separate and distinct departments were not fellow-servants. *Railroad* v. *Carrol,* 6 Heis., 363.

The rule thus qualified or limited is too well established, both upon reason and authority, to be now departed from. It rests not only upon the implied agreement to assume all the risks consequent upon the negligence of fellow-servants, but, in the case of railway employes particularly, it is supported by considerations of a just and true public policy. The safety of the traveling public is largely dependent upon the care and skill with which railway employes discharge their responsible and perilous duties. The fact that such fellow-servants must, as between themselves and the company,

take upon themselves the results of the careless-
ness and negligence of a fellow-servant, tends to
quicken the zeal and arouse the activities of each
employe against such negligence.

The public weal demands that no guaranty,
which tends to guard the public against the neg-
ligence of servants, guiding the powerful appliances
of the modern railway, shall be broken down; and
we can but regard the rule as qualified by the
Courts of this State as well calculated to stimu-
late each servant to his utmost exertions to pre-
vent negligence in others.

While this general rule is thus well settled, it
is equally as well established that the mere fact
that the injury was the result of the negligence of
one superior in rank to the injured servant, does
not take the case out of the rule. *Fox* v. *Sand-
ford*, 4 Sneed, 36; *Nashville & Chattanooga Railway*
v. *Elliot*, 1 Cold., 611; *Railroad* v. *Wheless*, 10
Lea, 741; *Railroad* v. *Rush*, 15 Lea, 151; *Rail-
road* v. *Handman*, 13 Lea, 423. The last case
referred to ably and clearly states the rule and re-
views the authorities. Where, however, the inferior
is injured while executing a lawful command of
his superior, or where the superior represents and
stands for the master, and has a right to control
the movements of the trains and of all the em-
ployes, in all such cases the rule *respondent superior*
applies, with reference to any injury resulting from
the official negligence of such superior. *Railroad*

Railroad Company *v.* Lahr.

v. *Bowler*, 9 Heis., 866; *Railroad* v. *Collins*, 1 Pickle, 227.

The true distinction we think is drawn, by Judge Cooper, and by it our case may be harmonized. He says: "In order to charge the master, the superior servant must so far stand in the place of the master as to be charged in the particular matter with the performance of a duty towards the inferior servant which, under the law, the master owes to such servant." *Railroad* v. *Handman*, 13 Lea, 423.

To the same effect is the rule as stated by Judge McFarland, who says: "The plaintiff must show that his injury resulted from the carelessness or want of skill of some one who, in the particular matter, stands in the place of the master." *Railroad* v. *Wheless*, 10 Lea, 748.

This rule draws, or, rather, recognizes, a clear distinction between the mere personal negligence of a superior fellow-servant, and his negligence in a matter in which he stands in the place of the master, who, under the law, owed a duty in that matter to the servant.

The cases of *Fox* v. *Sandford* and *Railroad* v. *Handman* furnish illustrations of the distinction that the mere personal negligence as distinguished from the official negligence of a superior will not be imputed to the master.

Applying the law as we have stated it, we can but regard the negligence of Ligon, the foreman, whereby Lahr was injured, as coming clearly within

the doctrine of the case of *Railroad* v. *Hand-man*.

The absence of sufficient proof that any duty rested upon Ligon to see to the means of descent used by his fellow-workmen, and the fact that Lahr did not notify Ligon of his purpose to descend, and that the proof clearly establishes that he was acting under no immediate order from Ligon in attempting to descend, makes the case one of mere personal negligence of Ligon, for which the master is not responsible. In other words, they were fellow-servants.

His Honor, the Circuit Judge, seems to have assumed in his charge that the mere fact that Ligon was the superior of Lahr, and that Lahr was injured by the negligence of Ligon, was enough to establish the plaintiff's case. The charge does not present to the jury the distinction we have shown to exist between the mere personal negligence of Ligon and his neglect concerning some matter wherein he represented the master. The case is presented by His Honor upon two opposing theories—that of a "pure accident" and that of some negligence of Ligon.

Both for error in the charge, as well as upon the facts of the case, we are constrained to reverse the judgment of the Circuit Court, and remand for a new trial.

The report of the Commission of Referees, recommending a reversal, is confirmed.