## Knox *v.* Railroad.

### (*Knoxville.*    October 15, 1898.)

1. MASTER AND SERVANT. *Fellow-servant.*

   A " boss wiper " who is the foreman of a gang of wipers employed by a railroad company to wipe its locomotives and direct them when to work and what to do, but who has no power to employ or discharge them, is their fellow-servant, and not a vice principal. (*Post, pp. 378, 379.*)

2. SAME. *Facts that do not fix master's liability.*

   The foreman of a gang of engine wipers employed by a railroad company, even if a vice principal, is not guilty of negligence rendering the company liable for the death of one working under his directions, where the latter was in the pit under the engine, or among its rods and beams, when it started out of the round house pursuant to the foreman's order, and was killed while the engine was backing upon the turntable, it appearing that the engineer had rung the bell before starting as a warning, and that the foreman had ordered all the wipers out to the turntable, and the circumstances indicate that the deceased must have been asleep, or that if awake, recklessly remained under the engine. (*Post, pp. 376–379.*)

---

FROM KNOX.

---

Appeal in error from the Circuit Court of Knox County.    JOSEPH W. SNEED, J.

N. N. OSBORN and W. H. SHAVER for Knox.

JOUROLMON, WELCKER & HUDSON for Railroad.

WILKES, J.   This is an action for personal injuries resulting in the death of the husband of plaintiff. Upon the trial the plaintiff introduced her evidence, and the defendant demurred to the same.   There was joinder in the demurrer, and, on hearing, the Court sustained it and dismissed the suit at plaintiff's cost, and she has appealed.   The judgment upon the demurrer recites that if there was negligence of a third person causing the death, it was that of a fellow-servant, for which the principal is not liable.

It appears that the deceased was an old man, and was employed as a hostler or engine wiper.   His duty was to wipe off the underside of the engines as they stood in their stalls in the enginehouse over a pit dug out for this purpose.   He was so engaged just previous to the accident.   The proof shows that a wiper can get into the pit under the engine while it stands in its stall and wipe off the under part of the engine.   In order to reach some of the higher parts, it is necessary for him to climb up among the under works of the engine.   There were a number of stalls in the roundhouse and a number of wipers employed, some to wipe the outside and some "under-wipers," to clean under the engines.   The deceased was one of the latter.   Over the wipers was a boss.   The other wipers work under his direction.   It was his duty to give the men their orders, look after the engines, and see when they are ready to move out of the roundhouse.   It was his duty to see if there was anything on the

track, open the doors to the enginehouse, and give signals for the engines to move out, and to give orders for the men to adjust the turntables.

This injury occurred at night. The deceased had been wiping the underside of an engine. Another engine was standing near on an adjoining track, also being wiped. The deceased had a lighted lantern with him under his engine. It was found after the killing in the pit, sitting on the ground.

Deceased had been doing this work for fourteen months, working in the night and sleeping in the daytime. There was a turntable just outside the doors of the enginehouse, on which each engine went on entering and leaving the house, so as to get the proper direction or track. It appears that when this engine was to be moved out, the doors of the room were opened, the bell rang, the engineer got upon his engine, and the boss wiper ordered the men out to the turntable to adjust it. This was turned in the proper position, and the steam was applied, and engine moved out to the table. It stopped some seconds before it reached the turntable, until the table could be adjusted. When the engine proceeded to back off the table, the end at which it went off was depressed, and the other end tilted up somewhat, and, just at this time, while the pilot of the engine was passing near the center of the turntable, cries of distress were heard. The engine passed off, and the deceased was discovered about the center bolt or pin of the turntable be-

tween the rails of the track. His legs were broken, and his body badly mangled. He died soon afterwards from his injuries.

The first question is whether the boss wiper, as he is called in this case, was a superior servant to the deceased, in the sense that he stood as a vice principal representing the master at the time and in the matter of this accident. The boss wiper was evidently the foreman of the gang of wipers, and directed them when to work and what to do. It does not appear that he had any power to employ or discharge them. He had certain duties of his own to perform, which may be termed of a higher grade or dignity than that of an ordinary wiper, such as opening the doors, giving the signal for the moving of the engines, ordering the hands to go to and adjust the turntable. It does not follow because a servant is a " foreman " that he is a vice principal, so as to make the master responsible for his negligence, but he must so far stand in the place of the master as to be charged in the particular matter with the performance of a duty toward the inferior servant which, under the law, the master has over the servant. *Allen* v. *Goodwin*, 8 Pick., 387, and cases there cited.

We do not think that the boss wiper, in discharge of his duty, stands in the place and stead of the master as to the wipers, but as their fellow-servant, albeit he is their foreman and directs them when and where to work. But, even if he be

considered as a vice principal, we cannot see in what respect he was negligent upon this occasion. It is not shown that it is one of his duties to look under the engine and ascertain whether a wiper may be under it before he gives the signal for it to leave the enginehouse. The wiper is presumed to know something of the movements of the engines himself, and to be on the lookout for their starting. In addition, the engineer rings the bell before starting, as a warning, and this was shown to have been done. In addition, in this instance the boss had ordered the wipers out to the turntable, and, if in the line of his duty, the deceased should have gone there. Instead of this, he was evidently up among the rods and beams on the underside of the engine when it started, and, though it stopped before it reached the turntable, the deceased made no effort to leave his place of danger and made no outcry. The unavoidable inference is that he must have been asleep, or, if awake, reckless in his conduct in remaining where he was until he was crushed by the centerpiece of the turntable in passing over it.

We do not see how, upon any hypothesis, the railroad could be held liable for such accident, and the Circuit Judge was correct in sustaining the demurrer and dismissing the suit, and his judgment is affirmed with costs.