# Railroad *v.* Bentz.

## (*Jackson.*    May 24, 1902.)

1. ACTION.   *Maintainable after nonsuit in Federal Court.*

   Where the United States Circuit Court of Appeals reverses a judgment in favor of plaintiff, declaring that he has no right of recovery, even upon his own theory, under the law as administered by the Federal Courts, and remands the cause for a new trial, and the plaintiff, thereupon, takes voluntary nonsuit and brings a new action in the State Court, the decision of the Federal Court is not conclusive, either as *res adjudicata* or as a declaration of the law of the case, upon plaintiff in the prosecution of his action in the State Court, where a different view of the law applicable to the case prevails, under which he is entitled to recover. (*Post, pp. 671–678.*)

   Cases cited: Collins *v.* Insurance Co., 91 Tenn., 432; Hooper *v.* Railroad, 106 Tenn., 28.

2. MASTER AND SERVANT.   *Who are not fellow-servants.*

   An engineer running a railway train is not, under the decisions in this State, the fellow-servant of a telegraph operator, at a station, whose duty it is to communicate to the engineer orders regulating the running of his train; and the negligence of such operator is not one of the risks that the engineer assumes by virtue of his employment. (*Post, p. 678.*)

   Cases cited: Railroad *v.* D'Armund, 86 Tenn., 73; Railroad *v.* Jackson, 106 Tenn., 438.

3. DAMAGES.   *Erroneous charge as to, in personal injury case.*

   In an action by a widow to recover damages sustained from the negligent killing of her husband, it is reversible error for the Court to instruct the jury that they may consider such loss of advice, counsel, comfort, and enjoyment as resulted to her from her husband's death as elements of the damages they may award her. (*Post, p. 678, 679.*)

Railroad *v.* Bentz.

Acts construed: Acts 1883, Chapter 186.
Cases cited: Railroad *v.* Wyrick, 99 Tenn., 509.

### FROM MADISON.

Appeal in error from Circuit Court of Madison County. LEVI S. WOODS, J.

C. G. BOND for Railroad.

HAYS & BIGGS for Bentz.

BEARD, J. Edward Bentz was engineer on freight train No. 84, which left Jackson at 2:40 o'clock on the morning of the tenth of June, 1897, destined for Mounds, Illinois. The train approached Milan about 4:20 A.M. There the engineer blew for the semaphore signal, which was set at red, and failed to receive the white signal in reply. Advancing his train still nearer, he blew again, when, according to the evidence of plaintiff below, the red signal turned to white. This, under the rules of the railroad, indicated that there were no orders and that the track was clear for him to go ahead. Upon receiving this signal, he moved his train north, and, while running at a moderate speed around a curve of the railroad, about 5:20 A.M., at a point north of Idlewild, he had a head-end collision with train No. 81, moving south. When this collision was

clearly inevitable, Bentz jumped, to save his life, and, in doing so, received mortal injuries, from which death ensued. This suit was brought by his widow to recover damages for his death, which is attributed, in the declaration, to the negligence of the railroad company. The act of negligence complained of is that, at 4: 37 A.M., after train No. 84 had passed Milan, the train dispatcher of plaintiff in error at Jackson, whose duty it was to regulate the movement of its trains, inquired of its local operator at Milan as to whether Bentz' train had passed that point, and the operator replied that it had not, and, acting on this information, the train dispatcher gave an order to the south bound train, No. 81, then at Martin awaiting orders, to meet north bound train, No. 84, at Idlewild, and, at the same time, gave the same order to the Milan operator, to be delivered to train No. 84 when it reached that point. Train No. 81 received this order, and was on its way to Idlewild when the collision occurred, but train No. 84 did not, as the order reached Milan a few minutes after No. 84, in answer to the white light displayed on the semaphore, had passed that point. This semaphore was under the control of this operator, and its movements were regulated by a rope which passed from it into the office occupied by him. There was a verdict and judgment for the plaintiff below, and the case has been brought to this Court by the defendant company.

A number of errors are assigned upon the action

of the trial Court. The first of these is that, upon motion of the plaintiff below, the Court struck out a plea in which the defendant averred that, prior to the bringing of the present suit, the plaintiff, Mrs. Bentz, had brought her action against the defendant in the Circuit Court of Madison County, in this State, seeking to recover damages for the same cause of action that this suit was instituted for; that, thereafter, the defendant, under the Act of Congress in such case made and provided, had that cause removed to the United States Circuit Court for the Eastern Division of the Western District of Tennessee; that, in said Court, upon an issue involving the question of liability of the defendant for the same act of negligence herein alleged and the injury consequent therefrom, there was a trial and verdict in favor of the plaintiff; that, on a writ of error prosecuted from the judgment thereon to the United States Circuit Court of Appeals, sitting at Cincinnati, Ohio, that Court adjudged that the jury, on the facts of the case, "because the injury occurred through the negligence of a fellow-servant (the telegraph operator at Milan) of the plaintiff's husband, should have been directed to bring in a verdict for the defendant, and, thereupon, reversed the judgment of the lower Court and remanded the case for a new trial; that a mandate issued to the Circuit Court for a new trial in accordance with this adjudication, and that, in the midst of the trial so ordered, and before its conclusion, the plaintiff,

24 P—43

over the objection of the defendant, was permitted to take a non-suit, and thereafter instituted the present action. Upon this state of facts, it was averred, the matters involved had been conclusively adjudicated against the plaintiff.

Was the Court in error in striking out this plea? While, in the plea, this action of the United States Circuit Court of Appeals is alleged to be *res adjudicata* of the question of the railroad's liability to the defendant in error for the loss resulting from the negligence of the telegraph operator and manager of the semaphore, yet, in the argument of counsel in support of the assignment of error, the claim is somewhat abated, and it is now insisted that its legal effect is that, upon the reopening of the facts between the same parties in the State Courts, it is *the law of the case* that, while not a bar to the action, it is conclusive upon the parties, so far as the question of liability rests upon the alleged negligence of the operator.

Many authorities are relied upon for this contention, but, so far as our examination has extended, they do not support it. Among them are some like *Supreme Lodge K. of P.* v. *Lloyd*, 107 Fed. Rep., 70; *Collins* v. *Insurance Co.*, 91 Tenn., 432, where the Court has held that the principles announced upon the first appeal constitute the law of the case upon a second appeal. However sound this rule is when applied to a suit that has once had the law declared in it by an Appellate Court and

Railroad *v.* Bentz.

is remanded, and, after a second trial in the Court below, once more reaches the Court of Appeals, we do not see upon what grounds it is to be made to apply, after a voluntary dismissal by the plaintiff, to a new suit instituted in an independent forum. Nor do we think that *Jacobs* v. *Marks*, 182 U. S., 583; *Hancock National Bank* v. *Fannum*, 176 U. S., 640; *Pittsburg, C., C. & St. L. R. R. Co.* v. *L., I., L. & Trust Co.*, 172 U. S., 493, and *Crescent City Live Stock Co.* v. *Butchers' Union Co.*, 120 U. S., 141, furnish any aid to this contention. It is unnecessary here to enter upon an analysis of these cases. It is sufficient to say that they are clearly distinguishable from the one at bar.

On the other hand, *Bucher* v. *Cheshire R. Co.*, 125 U. S., —; *Gardner* v. *Michigan Cen. R. Co.*, 150 U. S., 349, if not in express holding, at least by clear intimation, are *contra* to the view pressed by plaintiff in error. In the first, the plaintiff had sued in the State Court and recovered a judgment, which, on appeal to the Supreme Court, was reversed and the case remanded for a new trial. The plaintiff then took non-suit, and brought a new suit for the same cause of action and against the same defendant in a United States Court. The action was one for personal injuries, received while the plaintiff was traveling on Sunday, in violation of a Massachusetts statute. It was insisted that the holding of the Supreme Court of that State, that the plaintiff was not, at the time of his injury, traveling from

necessity or charity on the Lord's day, but on sec-
ular business, was an estoppel on him in the United
States Court, notwithstanding the subsequent nonsuit.
But this insistence was not sustained, and, in regard
to it, Judge Miller, delivering the opinion of the
Court, said: "It is not a matter of estoppel which
bound the parties in the Court below, because there
was no judgment entered in the case in which the
ruling of the State Court was made, and we do not
place the correctness of the determination of the Cir-
cuit Court, in refusing to permit this question to go
to the jury, upon the ground that it was a point
decided between the parties, and, therefore, *res adju-
dicata* as between them in the present action, but
upon the ground that the Supreme Court of the State,
in its decision, had given such a construction to the
meaning of the words, 'charity' and 'necessity,'
in the statute as to clearly show that the evidence
offered upon the subject was not sufficient to prove
that the plaintiff was traveling for either of these
purposes."

This paragraph, from the opinion of Miller, J.,
is embodied in that of Fuller, C. J., in *Gardner* v.
*Mich. Cent. R. Co.*, *supra*.   The opening statement
of the Chief Justice, in this last opinion, is suffi-
cient to our present purpose.   "Counsel for plain-
tiff in error does not contend that the judgment of
the Supreme Court of Michigan operated as a bar
to this action, but he insists that that judgment
precluded 'the plaintiff from successfully maintaining

Railroad *v.* Bentz.

a new action against the defendant upon evidence tending to prove only the same state of facts which the evidence before the Supreme Court of the State tended to prove.' This," continued the Court, "assumes a final adjudication on matter of law, binding between the parties, and treating the judgment reversing and remanding the cause as final, applies it as an estoppel, notwithstanding the fact that a nonsuit was subsequently taken. We cannot concur in this view. . . ."

We think, on principle and authority, a non-suit decides nothing, but leaves the parties, as they began their litigation, at arm's length. "Under no circumstances," says Mr. Freeman in Volume I., Section 266 of his work on Judgments, "will a judgment on non-suit be deemed final." Leaving the controversy indeterminate between the parties, it not only cannot support the plea of *res adjudicata*, but the reasoning and opinion of the Court, in reversing, cannot have the effect of binding in subsequent litigation as the "law of the case." *Fish* v. *Parker*, 14 La. Ann., 491.

It was with this view that this Court, speaking through McAlister, J., in *Hooper* v. *R. R.*, 106 Tenn., 28, quoted approvingly from *Gossman* v. *Jarvis*, 100 Fed. Reporter, 146, as follows: "When a cause of action, removed into a Court of the United States, is dismissed therefrom without a trial or determination of the merits, the right of action still remains in full force and vigor, unaffected thereby,

---

---

and the party having such right of action may· bring suit thereon, in any Court of competent jurisdiction, the same as though no previous suit had been brought.''

This being the effect of the non-suit in the United States Circuit Court, it left the trial Court in the present action free to apply the rule, well established in this State, that the negligence of a railroad telegraph operator is not one of the risks the train men assume, as they are in no legal sense fellow-servants. *R. R.* v. *D. Armond*, 86 Tenn., 73; *R. R.* v. *Jackson*, 106 Tenn., 438. It follows, therefore, that this assignment of error must be overruled.

An assignment is made upon the following paragraph of the trial Judge's charge: ''You also look to the loss of the aid—I don't mean pecuniary aid, but the aid of advice and counsel that the plaintiff, Mrs. Bentz, has sustained by virtue of his death, and also look to the loss of comfort and enjoyment that she has lost as a result of his death—look to the comfort and enjoyment of his society. Now, these are the elements of damages to be considered by the jury in determining what amount of damages to allow her, if you find in favor of the plaintiff.''

We think this error is well assigned. In *R. R.* v. *Wyrick*, 99 Tenn., 509, it was said that under Chapter 186 of the Acts of 1883, which provided for a recovery of ''damages resulting to the parties for whose use and benefit the right of action sur-

vives from the death consequent upon the injuries received," the widow could only recover her pecuniary loss on the death of her husband, and that case was reversed because the trial Judge had said to the jury upon the measure of damages "that they could look to the mental and physical suffering of the surviving widow." The Court there quoted approvingly from the opinion of Sharswood, J., in *Penn. R. R. Co.* v. *Butler*, 57 Pa., 335, in which it is said that *solatium* for distress of mind is not a proper element in fixing the amount of the survivor's personal loss. In the present case, the learned trial Judge, evidently by an inadvertence, excluded from the jury all consideration of the widow's pecuniary loss, and told them "to look to the loss of comfort and enjoyment" sustained by her, from the negligent fatal injury (if such it was) to her husband. It is insisted, however, that though this be error, yet there should be no reversal of this case, as upon the facts disclosed, it is evident that the amount of damages allowed by the jury fall short of the value of the life of the deceased. This may be true, yet we find this affirmative error in the record. It is impossible for this Court to say how much, if anything, was allowed for the loss of the enjoyment of her husband's society. There is no basis for speculation, even if we were inclined to so indulge ourselves. In addition, the matter of estimating damages, upon a legal basis, was for the jury, and we do not feel at liberty to usurp their function.

Railroad *v.* Bentz.

Other assignments of error were made, and these have been disposed of orally.

The result is that for the error indicated, the judgment is reversed and the cause remanded for a new trial.