Railroad v. Dillard.

LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* E. C. DILLARD.*

*(Nashville.   December Term, 1904.)*

1. **RAILROADS.**   Conductor on a passenger train is a fellow servant with a brakeman on a freight train.

The conductor on a passenger train has no control over a brakeman on a freight train, and is charged with no personal duty of the master towards such brakeman, and is not engaged in a separate department of the railroad service, and is, therefore, a fellow servant with such brakeman, and not a vice principal over him.

Cases cited and approved:   Railroad v. Bowler, 9 Heis., 866; Guthrie v. Railroad, 11 Lea, 372; Railroad v. Handman, 13 Lea, 423, 429; Railroad v. Collins, 85 Tenn., 227; Railroad v. Lahr, 86 Tenn., 335, 341; Railroad v. Martin, 87 Tenn., 398; Mining Co. v. Davis, 90 Tenn., 711, 719, 720; Railroad v. Northington, 91 Tenn., 56; Railroad v. Spence, 93 Tenn., 173; Railroad v. Wright, 100 Tenn., 56; Railroad v. Lawson, 101 Tenn., 408, 409; Howard v. Railroad (C. C.), 26 Fed., 837, 842; Railroad v. Edwards, 111 Tenn., 31; Railroad v. Andrews, 1 C. C. A., 636; Kerlin v. Railroad (C. C.), 50 Fed., 186-188; Railroad v. Needham, 11 C. C. A., 56; Railroad v. Mase, 11 C. C. A., 63; McMaster v. Railroad, 65 Miss., 264, 268; Railroad v. Devinney, 17 Ohio St., 197.

Cases cited, distinguished, and disapproved:   Madden v. Railroad, 28 W. Va., 617, 618; Daniel v. Railroad, 36 W. Va., 397, 411, 414, 417, 419; Railroad v. Edmonds (Ky.), 64 S. W., 727.

---

*As to when conductor is deemed to be a coservant of other railway employees, see note to Jackson v. Norfolk & W. R. Co. (W. Va.), 46 L. R. A., 337.

Railroad v. Dillard.

2.   **SAME.**   Employees in different departments are not fellow
servants; instances.

Railroad employees in separate or different departments of the
railroad service are not fellow servants; and under this doc-
trine, it has been held that a track repairer is not a fellow ser-
vant of the crew of a train running upon the track (Haynes v.
Railroad, 3 Cold., 222); that a section foreman is not a fel-
low servant of the train crew (Railroad v. Carroll, 6 Heis., 347,
361); that a watchman is not the fellow servant of an engineer
(Railroad v. Robertson, 9 Heis., 276); that a telegraph opera-
tor at a way station is not a fellow servant of the conductor of
a train (Railroad v. DeArmond, 86 Tenn., 73); that a car in-
spector is not a fellow servant of the crew of a switch engine
(Taylor v. Railroad, 93 Tenn., 307); that a depot agent is not
a fellow servant of the conductor of a train (Railroad v. Jack-
son, 106 Tenn., 438); that a bridge crew is not a fellow ser-
vant of the crew of a freight train (Freeman v. Railroad, 107
Tenn., 340); and that an engineer is not a fellow servant of a
telegraph operator (Railroad v. Bentz, 108 Tenn., 670). (*Post,
pp.* 245, 246.)

3.   **MASTER AND SERVANT.**   Servant assumes risk of danger
from negligence of a fellow servant, when.

Where the master has exercised due care in the selection of his
servants, the danger arising from the negligence of a fellow
servant is a risk voluntarily assumed by one upon entering the
service, and for which it is presumed that he is satisfactorily
compensated.   (*Post, pp.* 253, 254.)

FROM SUMNER.

Appeal from the Circuit Court of Sumner Coun-
ty.—B. D. BELL, Judge.

114 Tenn—16

SEAY & SEAY, for Railroad.

B. F. PROCTOR and J. D. G. MORTON, for Dillard.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Sumner county to recover damages for an injury inflicted upon the foot of the defendant in error in a collision that occurred in November, 1902, at Hendersonville, on the line of the plaintiff in error, between a freight train and a passenger train. There were verdict and judgment in the court below, and the railway company, after motion for a new trial had been overruled, appealed and assigned errors.

The defendant in error was a brakeman on the freight train. The declaration contained counts on the negligence of the train dispatcher, the negligence of the conductor of the freight train, and the negligence of the conductor of the passenger train. To the last-mentioned count—the third—there was a demurrer filed, raising the question that the conductor on the passenger train stood in the relation of fellow servant to the train crew of the freight train, and hence to the defendant in error, the brakeman on that train, and therefore the company would not be liable to him for an injury caused by the negligence of such passenger conductor. This demurrer was overruled by the circuit court judge, and his action on this matter forms the subject of the first assignment of error, which we shall now proceed to consider.

Railroad v. Dillard.

The first assignment of error raises the question whether the conductor on the passenger train was the fellow servant of the brakeman on the freight train, or whether such conductor stood in the relation of vice principal to the brakeman.

In our latest case upon the subject (*Railroad* v. *Edwards,* 111 Tenn., 31, 76 S. W., 897) it is said:

"The mere superiority in dignity, grade, or compensation, in favor of one servant of a common principal over other servants is not a mark by which to distinguish whether or not the former is a vice principal. . . . The most general test is that, in order to be a vice principal, a servant must so far stand in the place of his master as to be charged in the particular matter with the performance of a duty towards the inferior, which, under the law, the master owes to such servant, as furnishing tools (*Guthrie* v. *Railroad,* 11 Lea, 372, 47 Am. Rep., 286), or machinery and appliances (*Railroad* v. *Lahr,* 86 Tenn., 335, 341, 6 S. W., 663), or giving orders with respect to work to be done by the subordinate (*Railroad* v. *Handman,* 13 Lea, 423, 429).

"A test frequently stated in our cases is the authority to give orders, as a vice principal, to the subordinate servant, in directing him when, where, and how to work . . . .

"Some illustrations of the foregoing are seen in the following cases: *Railroad* v. *Bowler,* 9 Heisk., 866; *Railroad* v. *Northington,* 91 Tenn., 56, 17 S. W., 880, 16 L. R. A., 268; *Railroad* v. *Lawson,* 101 Tenn., 408, 409,

47 S. W., 489. In these cases a section boss was held to stand as a vice principal to the section hands under him because he had power to order them with respect to their work and also because it was his duty to see that they had proper tools with which to work. In *Railroad* v. *Collins*, 85 Tenn., 227, 1 S. W., 883, and *Railroad* v. *Martin*, 87 Tenn., 398, 10 S. W., 772, 3 L. R. A., 282, it was held that the engineer was the vice principal of the brakeman on a train, when, in the absence of the conductor, he had power to give the brakeman orders in respect to his work, but otherwise not; and in *Railroad* v. *Wright*, 100 Tenn., 56, 42 S. W., 1065, it was held that the conductor stands as vice principal to all of the train force, because they are all under his orders." To same effect, *Railroad* v. *Spence*, 93 Tenn., 173, 23 S. W., 211, 42 Am. St. Rep., 907.

The conductor of the passenger train in question, however, had no power to give orders to the brakeman on the freight train. This ground for adjudging the relation of vice principal and of servant thereunder did not, therefore, exist.

Was the conductor of the passenger train charged with any of the personal duties of the master towards the brakeman on the freight train? Was he charged with the duty of furnishing tools and appliances or a safe place to work? There is nothing to show that he was charged with such duties.

Was the passenger conductor in charge of, or engaged in, a separate department of the master's business?

Railroad v. Dillard.

In this State the departmental doctrine is recognized in railway cases. The grounds on which it rests are thus stated in *Coal Creek Mining Company* v. *Davis,* 90 Tenn., 711, 719, 720, 18 S. W., 387, 389:

"The doctrine rests upon the theory that the vast extent of the business of railway companies has led to the division of their business into separate and distinct departments; that by reason of this division a servant in one branch or department has no sort of association or connection with one in another department; that this absence of association gives the servant no opportunity of observing the character of a servant in another department of labor, and no opportunity to guard against the negligence of such servant. The want of consociation is the idea underlying this limitation. This rule has not been extended by us beyond railroad corporations, and we are not disposed to extend it further than to the class of employments to which it has been heretofore limited."

Under this doctrine it has been held that a track repairer was in a different department from, and hence not the fellow servant of, the crew of a train running upon the track (*Haynes* v. *Railroad Co.,* 3 Cold., 222); for the same reason, that a section forman was not the fellow servant of the train crew (*Railroad* v. *Carroll,* 6 Heisk., 347, 361); that a watchman was not the fellow servant of an engineer (*Railroad* v. *Robertson,* 9 Heisk., 276); a telegraph operator at a way station, not the fellow servant of the conductor of a train (*Railroad Co.* v. *De Armond,* 86 Tenn., 73, 5 S. W., 600, 6 Am. St. Rep.,

Railroad v. Dillard.

816) ; a car inspector, not the fellow servant of the crew of a switch engine (*Taylor* v. *Railroad Co.,* 93 Tenn., 307, 27 S. W., 663) ; a depot agent, not the fellow servant of the conductor of a train (*Railroad Co.* v. *Jackson,* 106 Tenn., 438, 61 S. W., 771) ; a bridge crew, not the fellow servant of the crew of a' freight train (*Freeman* v. *Railroad,* 107 Tenn., 340, 64 S. W., 1) ; and an engineer, not the fellow servant of a telegraph operator (*Railroad Co.* v. *Bentz,* 108 Tenn., 670, 69 S. W., 317, 58 L. R. A., 690, 91 Am. St. Rep., 763).

We have no case holding that separate trains constitute separate and distinct departments of railway service, nor do we think they can be so treated on principle. The reason underlying the departmental doctrine resides in, as already stated, the need of consociation to enable coemployees to judge of the caution, diligence, and efficiency of each other, in order that they may properly protect themselves against negligence. In distinct departments of the service they are regarded as constantly working apart from each other, without the opportunity of mutual observation and criticism. This reason, however, cannot be held to apply to the crews of different trains running upon the tracks of the same company. It does not appear that such crews are permanently attached to any special trains. Moreover, even if not associated upon the same train, the crews of each train, in passing and repassing and in mingling with each other in the handling of traffic in the course of their work, necessarily have an opportunity of judging to some extent

how the various trains are managed by the people who man them. At best, the amelioration of the dangers incident to a hazardous business cannot be very great for the servants of a common master, even when they work in the same department, where the number of such coemployees is great, as very often happens in the railway business, and in other kinds of business.

If the conductor of the passenger train in question had no control over the brakeman on the freight train, or was not charged with any duty of the master towards him, as in the furnishing of tools and appliances or a safe place to work, or was not in a different department of the master's service (and we have seen that he had no such powers and bore no such relation), which are the only exceptions our cases recognize as taking coemployees out of the class of fellow servants, then the said conductor and brakeman were fellow servants, and the master was not liable for the injuries inflicted upon one by the negligence of the other. This conclusion seems inevitable, on principle.

The weight of authority likewise supports this conclusion. *Baltimore & O. R. Co.* v. *Andrews,* 17 L. R. A., 191, 50 Fed., 728, 1 C. C. A., 636; *Kerlin* v. *Chicago, etc., R. Co.,* (C. C.), 50 Fed., 186-188; *St. Louis, etc., R. Co.* v. *Needham,* 63 Fed., 107, 112, 11 C. C. A., 56, 25 L. R. A., 837; *Northern Pac. R. Co.* v. *Mase,* 63 Fed., 114, 11 C. C. A., 63; *McMaster* v. *I. C. R. Co.,* 65 Miss., 264, 268, 4 South., 59, 7 Am. St. Rep., 654, 657; *Pittsburg, Ft. W. & C. R. Co.* v. *Devinney,* 17 Ohio St., 197. There are

other cases holding a contrary view. *Madden's Adm'r* v. *R. Co.*, 28 W. Va., 617, 618, 57 Am. Rep., 695, 696, 697; *Daniel's Adm'r* v. *Chespeake, etc., R. Co.*, 36 W. Va., 397, 411, 414, 417, 419, 15 S. E., 162, 32 Am. St. Rep., 870, 882, 885, 888, 889, 16 L. R. A., 383, 387, 389, 390; *L. & N. R. Co.* v. *Edmonds' Adm'x* (Ky.), 64 S. W., 727. The Kentucky case is based, in substance, on the ground that separate trains constitute separate departments, or that they are equivalent thereto because the crews of such separate trains are "so disconnected as to not give the one a right or opportunity for controlling, admonishing, or even observing the manner of the colaborer doing his work." We have already held this distinction inadmissible, in a former part of this opinion. The substance of the West Virginia cases (both collision cases), as we understand them, is that it is the personal duty of the master to keep the way clear, and that each conductor in charge of a train should be regarded as representing the master for that purpose. We think this view is fully met by the reasoning of Sanborn, J., in .St. *L., etc., Ry. Co.* v. *Needham,* supra.

In that case it appeared there was a rule of the company which provided: "That conductors of all trains, when approaching meeting points where they are to take the siding, must go to the forward part of trains and attend to the switch in person. On train leaving the siding they must set up switch for the main track in person. Conductors must not assign this duty to any one, but must attend to it in person in every instance."

Railroad v. Dillard.

The decedent was a fireman on a passenger train running south from Little Rock, Ark., December 16, 1889. About two hours before this passenger train arrived at Alexander, a station ten miles south of Little Rock, the conductor of a construction train of the railroad company caused the switch of the spur track at that place to be opened, ran his train upon that track and then ran it north to Little Rock, and left the switch open, when it was his duty to close it. The passenger train ran into the open switch, and Mr. Needham was killed.

In answer to the contention that it was the personal duty of the master to make and keep the way safe, the court, among other things, said:

"The line of demarkation between the absolute duty of the master and the duty of the servants is the line that separates the work of construction, preparation, and preservation from the work of operation. Is the act in question work required to construct, to prepare, to place in a safe location, or to keep in repair the machinery furnished by the employer? If so, it is his personal duty to exercise ordinary care to perform it. Is the act in question required to properly and safely operate the machinery furnished, or to prevent the safe place in which it was furnished from becoming dangerous through its negligent operation? If so, it is the duty of the servants to perform that act, and they, and not the master, assume the risk of negligence in its performance.

"The roadbed, ties, tracks, stations, rolling stock, and all the appurtenances of a well-equipped railroad to-

gether constitute a great machine for transportation. It is the duty of the railroad company to use ordinary care to furnish a sound and reasonably safe machine, to use due diligence to keep it in proper repair, and to use ordinary care to employ reasonably competent servants to operate it; but when this duty is performed, the duty rests upon the servant to operate it carefully.   In the case before us there is no evidence that the conductor who negligently left the switch open was not selected with reasonable care.   There is no claim that there was any defect in the switch that hindered or prevented the conductor from closing it.   The company furnished a switch sufficient to move the rails, and used due care in selecting the servant to operate it.   Before this servant commenced to operate it, the switch was closed, so that the passenger train on which the decedent 'was killed might have passed in safety.   It became the duty of the conductor, in the operation of the railroad, to open this switch, and to run his train through it upon the spur track.   He did so.   It then became his duty to take his train off the spur track and to close the switch.   He took his train off and proceeded south, but carelessly left the switch open.   His negligence was not in the construction, preparation, or repair of the railroad, but in its operation.   The railroad was safe before he made it unsafe by his negligence in operating it, and he was discharging none of the personal duties of the master, but one of the duties of the servant, when he became guilty of the fatal negligence.   Any other holding would anni-

Railroad v. Dillard.

hilate the now settled rule of liability for the negligence of fellow servants. It will not do to say that the timely movement and fastening of a switch in the ordinary operation of a railroad is requisite to provide a safe place for the next train to be operated in, and hence is one of the personal duties of the master. Under such a rule, it would become the absolute duty of the master to so operate all switches, all turntables, the levers of all engines, all brakes, all cars and every appurtenance of the railroad, that every place upon it should at all times be safe, and no negligence of any employee could ever cause an injury to another servant for which the master might not be held liable. At the instant of the injury every place in which an injury is inflicted is unsafe. The test of liability is not the safety of the place nor of the machinery at the instant of injury, but the character of the duty, the negligent performance of which caused the injury. Was it a duty of construction, preparation, or repair, or was it a duty of operation of the machine?

"In our opinion, the duty of opening and closing a switch in the ordinary operation of a railroad is not one of the personal duties of the master, but a duty of operation—a duty of the servant—for negligence in the discharge of which another servant of the same master, engaged in operating a train over the same railroad, cannot recover."

And it is well said by Brewer, J., in *Howard* v. *Denver, etc., Ry. Co.* (C. C.), 26 Fed., 837, 842—a collision case:

Railroad v. Dillard.

"It will not do to say that, because Ryan's engine was in the way and collided with decedent's train, the track was not clear, and therefore the master had failed in his duty of providing a safe place for the employee to work in and upon. The negligent use by one employee of perfectly safe machinery will seldom be adjudged a breach of the master's duty of providing a safe place for other employes. Such a construction would make any negligent misplacement of a switch, any negligent collision of trains, even any negligent dropping of tools about a factory, a breach of the duty of providing a safe place. The true idea is that the place and the instruments must in themselves be safe, for this is what the master's duty fairly compels, and not that the master must see that no negligent handling by an employee of the machinery shall create danger. Neither can it be said that Ryan and decedent were engaged in a different class of work. Both were employed in the movements of the trains—the same kind of service. True, they were on different trains, and at the time of the accident had no opportunity of noticing the conduct of each other until too late to prevent the collision. But being engaged in the same kind of service, and on the same division, they must naturally have often been thrown into contact and had ample opportunities for mutual supervision. To subdivide beyond the class of the service, into the place of work, would carry the exception beyond well-recognized limits. It would make the train men on one train not fellow servants with those on another; the carpenters and ma-

Railroad v. Dillard.

chinists in one room strangers in service to those of another; one gang of section men not coemployees with another—and all because at the time their places of work happened to be different."

To admit the qualification into the law of master and servant sought to be introduced in this case, making the conductor of one train the vice principal of employees upon another train, thereby declaring each train to constitute a separate department of the service, would practically break down the whole law of fellow servants as previously understood in this State. The law as it exists in this State is not unfair either to the master or the servant. While on the one hand, it seems, on a casual view, that it is a hardship upon the servant to deny him relief for an injury inflicted upon him by the negligence of a fellow servant in whose selection he had no voice, yet it seems equally hard to make the master liable to one of his servants for the negligence of another servant when he (the master) has exercised due care in selecting such servant. What more could he do? It is impossible that he should supervise and control every act of his servants. Yet if he is made liable to each of his servants for every act of all his servants in the course of the employment—and there may be and there often are thousands of them—the law then places upon him a duty which every one knows that no one can discharge. The true and just view is that expressed in our cases—that, after the master has exercised due care in the selection of his servants, the danger arising from the negligence

of a fellow servant is a danger which one going into the service voluntarily assumes, and it is a risk for which it is presumed he is satisfactorily compensated by the larger wages he can earn in the service than in other employments.    In this State we have already narrowed the field covered by the law of fellow servants by withdrawing from it cases wherein one servant of the master is set over other servants, with power to command them in their work, and by the introduction of the departmental doctrine as construed and applied in our previous cases, and have added cases arising under these to the master's generally recognized duty of furnishing safe tools and appliances, a safe place to work, and the selection of reasonably competent servants.    We deem it inexpedient to make any further extension than may follow from a natural and reasonable development of the principles already adjudged.    We do not think the case now put before us lies within the path of that development.

We are of opinion, therefore, that the circuit judge committed error in not sustaining the demurrer to the third count of the declaration, and the first assignment is sustained.

Other assignments of error are disposed of in a memorandum opinion filed with the record, and need not be further referred to here.

Reverse and remand.