LEROY SMITH, RALPH WORKMAN and OTIS SMITH, Plaintiffs-in-Error, v. JAMES E. GRAVES, Defendant-in-Error.—405 S.W.(2d) 42.

Western Section. March 11, 1965.

Certiorari Denied by Supreme Court June 7, 1965.

Aaron Brown, Paris, for plaintiffs in error.

Van Dyke & Dunlap, Paris, for defendant in error.

CARNEY, J. The plaintiff below, James E. Graves, was injured when a bulldozer driven by the defendant, Otis Smith, backed into him and pinned him against a tree. The bulldozer was owned by the defendants, Leroy Smith and Ralph Workman, and was being operated by the defendant, Otis Smith. The bulldozer was being used to clear underbrush from the farm of one Algie Cook. Plaintiff Graves had never operated the bulldozer but

was employed by the defendants, Ralph Workman and Leroy Smith, as a helper for Otis Smith.

The plaintiff's principal duties consisted of assisting in greasing the bulldozer, in making some minor repairs and in driving a pickup truck containing gasoline, oil, etc., for use in the bulldozer to and from the area where the bulldozer was being operated. A jury awarded the plaintiff a verdict of $2,000.00 against all three defendants upon which judgment was entered and the defendants have appealed and assigned error.

While the defendants have filed seven assignments of error they may be summarized into three contentions: (1) The evidence showed conclusively that the plaintiff Graves was guilty of proximate contributory negligence as a matter of law; (2) that the plaintiff James E. Graves was presumed to know of and assumed the ordinary risk of his employment and assumed the risk of injuries arising therefrom whether he was actually aware of them or not; hence His Honor the Trial Judge was in error in failing to grant and give in charge defendants' special request No. 2 based on the principle of assumption of risk; (3) that the fellow servant rule is applicable to the facts of this case and that His Honor the Trial Judge was in error in failing to give special request No. 1 of defendants based upon the fellow servant doctrine.

■ The defendant, Leroy Smith, owned a farm on which the plaintiff, James E. Graves, unmarried and aged 49, lived in a house rent-free. James E. Graves worked a small cotton crop on the shares; he did some work in looking after the hogs on the farm for which he received compensation at the rate of 25¢ for each pig weaned. He did general farm work and served as a

helper to Mr. Otis Smith who was the operator of the bulldozer.

The bulldozer work consisted of digging ponds and clearing thickets and timberland on farms in the area near Paris, Tennessee. Apparently it was necessary to move from farm to farm very often and the defendants, Ralph Workman and Leroy Smith, furnished a big truck and lowboy to haul the bulldozer from one area to another. The defendants, Ralph Workman and Leroy Smith, furnished a small pickup truck which was usually driven by the plaintiff, James E. Graves, to and from the scene of bulldozer work hauling gasoline and oil and other minor supplies for the operation and maintenance of the bulldozer. Oftentimes the plaintiff Graves would drive Mr. Otis Smith from his home to the area of the bulldozer operation in the pickup truck.

On the day in question the bulldozer had just been moved to the farm of Algie Cook. Cook and James E. Graves mounted the bulldozer along with the operator, Otis Smith, and they rode about three-quarters of a mile through the farm to a creek bank where there were some scrub timber and thickets to be cleaned up. The owner, Cook, alighted from the bulldozer and stepped over near the creek bank to show the operator the particular area he wanted cleared first.

The plaintiff, James E. Graves, testified that the operator, Otis Smith, told him to get off the bulldozer and get out of the way; that he intended to begin moving brush and trees in front of the bulldozer and that he, the plaintiff, then got off the bulldozer and got behind it standing about four feet from the bulldozer at the time the defendant, Otis Smith, put the bulldozer in operation;

that instead of going forward Mr. Otis Smith backed the bulldozer up and pinned him against a tree causing him severe injuries.

The operator of the bulldozer, Mr. Otis Smith, testified that he told plaintiff Graves to get off the bulldozer and get way back or else some of the long saplings might strike him; that Mr. Graves got off the bulldozer and stepped behind and that he thought he was out of the way; that Mr. Smith had to swing the front of the bulldozer around and he locked the left track so as to make the right hand pull the left side of the bulldozer around and it caught Mr. Graves' leg and pushed him against the sapling and when Graves hollered he heard him, stopped and eased the bulldozer up from against plaintiff.

Further, Otis Smith testified that it wasn't necessary for the plaintiff to be down near the scene of the operation at all; that the plaintiff had seen him operate the bulldozer dozens of times and that he did not do anything on the occasion of the injury to the plaintiff that was not ordinary and regular in the operation of the bulldozer and that there were no movements made on the bulldozer at that time that were not necessary to do the job which he had intended to do.

Thus, by way of summary, it appears that the plaintiff was standing on the bulldozer and told by the operator to get back out of the way and the plaintiff merely stepped off the bulldozer and back only four feet behind the bulldozer expecting the operator to drive the bulldozer forward and to clear the timber in front of the bulldozer. We also find the operator of the bulldozer telling the plaintiff to get off the bulldozer and get back out of the way and then moving his bulldozer in a somewhat backward

position without ever looking back to see if in fact the plaintiff had gotten out of the way. The plaintiff was pinned by the bulldozer against a tree and injured. Under all these circumstances we cannot hold as a matter of law that the plaintiff was guilty of proximate contributory negligence but think that the question of plaintiff's negligence was properly a matter for the jury to determine. Therefore, the first contention of the plaintiffs-in-error is overruled.

■ Next we turn to the second contention of the plaintiffs-in-error, namely that the plaintiff had assumed the risk of the injuries which he actually received when he accepted employment around the bulldozer. Plaintiff admitted that he had been working around the bulldozer for five months and had seen it push over bushes and clean up ground and knew that it was a dangerous operation and that any big machinery could be dangerous whenever it was in operation. The defendants insist that by virtue of the plaintiff working around such bulldozer with knowledge that it was dangerous he assumed the risk of injury from such bulldozer and therefore the defendants are not liable in damages to the plaintiff for his injuries. They cite and rely upon the recent case of Gargaro v. Kroger Grocery & Baking Co., 22 Tenn.App. 70, 118 S.W.2d 561. On the question of assumed risk we quote from the Gargaro case as follows:

"The doctrine of assumed risk, sometimes (as in Hatch v. Brinkley, 169 Tenn. 17, 80 S.W.2d 838), referred to as incurred risk, is usually applied to contract cases growing out of the relation of master and servant, but such is not always the case. The application of the doctrine is often simply another way of applying the rule of contributory negligence, and fre-

quently the difference between the two is merely a difference in the choice of language or style of expression. In other words, the fact that one knows of potential danger and voluntarily subjects himself thereto may and often does render him contributorily negligent if accident or injury ensues. An appropriate statement along these lines is found in Loew's Nashville & Knoxville Corporation v. Durrett, 18 Tenn.App. 489, at page 503, 79 S.W.2d 598, wherein it is said by presiding Judge Faw (page 606):

" 'An invitee may rely upon the safety of the premises, if he is not aware of the danger (Rosenbaum v. Shoffner, 98 Tenn. 624, 633, 40 S.W. 1086), or there is no reason to apprehend danger (Ellis v. Cotton Oil Co., 3 Tenn.Civ.App. (3 Higgins), 642).

" 'In the case of Bouchard & Sons Co. v. Keaton, 9 Tenn.App. 467, the plaintiff sued for damages on account of injuries to his person caused by being hit by a piece of steel dropped by men working on a bridge. The evidence showed that plaintiff went to work under the bridge knowing that things might be dropped by the workmen above. It was held that he assumed the risk of the position and could not recover.

" 'In the opinion in the case just cited, this court said:

" ' "In strictness, the technical doctrine of 'assumption of risk' applies perhaps only to the contractual relation of master and servant, but one frequently finds in opinions of the courts the expression 'assumption of risk' as the practical equivalent of the term 'contributory negligence.' 20 R.C.L., p. 109, sec. 95.

" ' "In 45 Corpus Juris, p. 944, section 503, it is said:

" ' "While, under certain circumstances, the same acts or conduct may render one guilty of contributory negligence or give rise to the defense of assumption of risk, 'assumed risk' and 'contributory negligence' are distinct doctrines of law, and are not synonymous. The doctrines are distinguished from each other elsewhere in this work. In common parlance, however, the reckless disregard of a danger is often spoken of as an assumption of risk by the party exposing himself thereto, although it is not the ordinary assumption of risk arising out of contract relations.''

" ' "And it has long been the law, based on the ancient maxim, volenti non fit injuria, that one who voluntarily places himself in a position of peril, knowing and appreciating the danger, assumes the risk thereof. Broom's Legal Maxims (8th Ed.), p. 267 et seq. * * *

" ' "In Standard Oil Co. v. Titus, 187 Ky. 560, 563, 219 S.W. 1077, the court said:

" ' " 'In view of the fact that the doctrine of assumed risk is not based entirely on contract, but grows out of the application of the maxim, "Volenti non fit injuria," it is well settled that independently of the relation of master and servant, there may be a voluntary assumption of the risk of a known danger which will bar one from recovering compensation in case of injury, even though he was in the exercise of due care.'

" ' "The statement of the law last quoted was approved and applied in the case of McLeod Store v. Vinson, 213 Ky., 667, 281 S.W. 799, 800. And the same

principle was announced and applied in the case of McLean v. Studebaker Bros. Co., 221 N.Y., 475, 117 N.E. 951, 1 A.L.R. 1551, 1553." ' Loew's Nashville & Knoxville Corp. v. Durrett, 18 Tenn.App. 489, 503, 79 S.W.2d 598."

The Gargaro case has been cited and quoted by our court many times. See Higgins v. Patrick, 47 Tenn.App. 484, 502, 339 S.W.2d 39.

However, the probability that the plaintiff would be injured by being pinned between the bulldozer and a tree was not such a risk that was likely to ensue by virtue of plaintiff's employment as a helper in the operation of the bulldozer. Therefore, we hold that the plaintiff did not assume the risk of being injured by having the bulldozer back into and against him and pin him against a tree as in the instant case. Hence, His Honor the Trial Judge correctly refused to charge the jury that the plaintiff, Graves, had assumed such risk.

We turn now to the third and principal defense of the defendants, Leroy Smith and Ralph Workman, that they are not liable to their employee, plaintiff James E. Graves, under the fellow servant rule for the negligence of their employee, Otis Smith. Except where changed by the Workmen's Compensation Act the common law rule is in force in Tennessee to the effect that a master is not responsible to the servant for injuries resulting from negligence of a fellow servant engaged in a common employment where there has been due care in the selection and employment of the fellow servant rule. Williams v. McElhaney, 1958, 203 Tenn. 602, 315 S.W.2d 106. In the McElhaney case Mr. Justice Burnett (now Chief Justice) stated that this rule was first announced by the Tennessee

Supreme Court over a hundred years ago in an opinion by Judge Caruthers in the case of Fox v. Sandford, 36 Tenn. 36.

There is no suggestion that the Workmen's Compensation Act is applicable to the facts of the case at bar. The fellow servant rule has been applied and discussed in a legion of reported cases by our appellate courts throughout the years. The defendant-in-error, Graves, insists that the facts of the instant case bring it within an exception to the fellow servant rule and that the employee, Otis Smith, was in fact a vice principal and that therefore the defendants, Leroy Smith and Ralph Workman, are liable for his negligence. A very enlightening discussion of our cases bearing upon the subject of vice principal is to be found in the early case of Ohio River & C. Railroad Co. v. Edwards, 1903, 111 Tenn. 31, 43, 76 S.W. 897, from which we quote as follows:

"It should be first observed that the mere superiority in dignity, grade, or compensation, in favor of one servant of a common principal over other servants, is not a mark by which to distinguish whether or not the former is a vice principal. Railroad v. Wheless, 10 Lea, 746, 747, 43 Am.Rep., 317; R. Co. v. Handman, 13 Lea, 428; R. Co. v. Rush, 15 Lea, 151; Coal Creek Mining Co. v. Davis, 90 Tenn. 718, 18 S.W. 387. The most general test is that, in order to be a vice principal, a servant must so far stand in the place of his master as to be charged in the particular matter with the performance of a duty towards the inferior which, under the law, the master owes to such servant—as furnishing tools (Guthrie v. R. Co., 11 Lea, 372, 47 Am. Rep. 286), or machinery and appliances (R. Co. v. Lahr, 86 Tenn. 335, 341, 6 S.W. 663), or giving orders

with respect to work to be done by the subordinate (R. Co. v. Handman, 13 Lea, 423, 429).

"A test frequently stated in our cases is the authority to give orders, as a vice principal, to the subordinate servant, in directing him when, where, and how to work. Iron Co. v. Dobson, 7 Lea, 377, 378; R. Co. v. Wheless, 10 Lea, 741, 747, 43 Am.Rep. 317; R. Co. v. Handman, 13 Lea, 423, 429; Bradley v. R. Co., 14 Lea, 374-379, 380; R. Co. v. Collins, 85 Tenn. 227, 229, 1 S.W. 883; R. Co. v. Lahr, 86 Tenn. 335, 337, 340, 342, 6 S.W. 663; Coal Creek Mining Co. v. Davis, 90 Tenn. 711, 717-719, 18 S.W. 387; R. Co. v. Northington, 91 Tenn. 56, 58, 59, 17 S.W. 880, 16 L.R.A. 268; R. Co. v. Kenley, 92 Tenn. 207, 210, 211, 21 S.W. 326; Electric Ry. Co. v. Lawson, 101 Tenn. 406, 409, 410, 47 S.W. 489; R. Co. v. Jones, 9 Heisk. 33. In some of these cases, and in others to be presently cited, a distinction is taken between one who has authority, derived from the principal, to give orders to subordinates, and a mere foreman without such authority, the latter being held not to be a vice principal. In some of the cases it is indicated that in addition to the power to give orders is included the power to employ and discharge. Knox v. R. Co., 101 Tenn. 375, 47 S.W. 491; Gann v. R. Co., 101 Tenn. 380, 381, 47 S.W. 493, 70 Am.St.Rep. 687; National Fertilizer Co. v. Travis, 102 Tenn. 16, 19, 49 S.W. 832. In one case the test is indicated as the power to employ and direct. R. Co. v. Bowler, 9 Heisk. 866. In these cases, however, no stress is laid upon the element embraced in the power to employ and discharge. These features are merely mentioned incidentally.

"We are of the opinion, therefore, that the real test is that one which we first stated, and of which the second

is a constituent part, and that no stress should be laid upon the power to employ and discharge, although, when these powers exist, they add strength and dignity to the position of the vice principal.''

While it is true that in the instant case the bulldozer operator, Mr. Otis Smith, testified that he exercised no control of authority over the plaintiff, James Graves, and that he never gave him any orders, we think there was ample evidence upon which the jury could and did hold to the contrary. The proof is uncontradicted that Mr. Smith was in full charge of the bulldozer operation; that he oftentimes located new jobs to do without the assistance of the owners, Leroy Smith and Ralph Workman; that he himself transported the bulldozer by lowboy trailer from one job to another and that the greasing of the bulldozer and the filling it with gas were all under his supervision, direction and control. The defendant, Leroy Smith and Ralph Workman, substantially admitted that the plaintiff, James Graves, was employed only as a helper and that his duties consisted mainly of being on hand to serve Mr. Otis Smith in whatever capacity he was needed. He had never driven the bulldozer and there was no contention that he was a joint operator of the bulldozer along with Mr. Otis Smith.

Under the authority of Ohio River & C. Railroad Co. v. Edwards, supra, and Williams v. McElhaney, supra, we hold that the defendant, Otis Smith, was in fact a vice principal in so far as his relationship to the plaintiff, James Graves, was concerned and that therefore the defendants, Leroy Smith and Ralph Workman, his employers, may not escape liability under the fellow servant rule. His Honor the Trial Judge correctly re-

fused to charge the fellow servant doctrine as requested by the defendants.

We have read and considered the case of Knox v. Southern Railroad, 1898, 101 Tenn. 375, 47 S.W. 491, cited and relied upon by defendants and hold that the ruling of such case is not controlling of the case at bar. All of the assignments of error are overruled and the judgment of the lower court is affirmed at the cost of the plaintiffs-in-error.

Avery, P.J. (W.S.), and Bejach, J., concur.