## ELLIOTT v. FELTON.

### (Circuit Court of Appeals, Sixth Circuit. December 2, 1902.)

### No. 1,076.

1. STATE COURT—CONSTRUCTION OF STATUTE—WHAT CONSTITUTES—BINDING EFFECT ON FEDERAL COURT.

Shannon's Code Tenn. § 4025, provides that the right of action which a person who dies from injuries from another, or whose death is caused by the wrongful act, etc., of another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, etc. Sections 4026–4028 authorize the personal representative or widow to sue, and provide that, if the deceased has sued, the action may proceed after his death without revivor. Section 4029, being an amendment to the original act, provides that the party suing may recover for the suffering, loss of time, etc., resulting to the deceased, and also the damages resulting to the parties for whose use and benefit the right of action survives. The supreme court of Tennessee has held, notwithstanding section 4029, that this statute does not create a new liability, but merely continues decedent's cause of action by abrogating the common-law rule abating personal actions on the death of the plaintiff. *Held* that, as the liability is not created, but merely preserved, by statute, a decision of the supreme court of Tennessee, in an action for wrongful death, that the conductor of a railroad train was a vice principal, and not a fellow servant towards the brakeman, did not define a statutory liability so as to be binding on the federal courts as a construction of a state statute.

---

¶ 1. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

2. SAME.

> The decision holding a conductor to be a vice principal, having professedly proceeded on general grounds, must be regarded as one of general law, and not as involving the construction of a statute.

In Error to the Circuit Court of the United States for the District of Tennessee.

Charles M. Cist, for plaintiff in error.

Edward Colston, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge. This was an action to recover damages for the negligent killing of Simon Matthews, the intestate of the plaintiff in error. Deceased was a brakeman in the employment of the defendant, and was killed in collision through the negligence of his own conductor. The court below, upon this conceded state of facts, instructed the jury that the deceased and his conductor were fellow servants, and that the defendant receiver was not liable for an injury of one fellow servant by another in the same common service. This instruction is assigned as error upon the ground that the collision occurred in Tennessee, and that the question of fellow servant was erroneously decided under the law of Tennessee. Confessedly, there is no statute in Tennessee defining fellow servant, or regulating the liability of an employer to his servant for the negligent acts of either the master or each other. So, also, it is not disputed but that, if the question is one of general, and not local, law, the conductor in charge of a train is the fellow servant of a brakeman on the same train. Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. District Judge Evans followed this decision in the court below, and refused to be governed by Railroad Co. v. Spence, 93 Tenn. 174, 23 S. W. 211, 42 Am. St. Rep. 907, where it was held that the power of control exercised by the conductor over his train and its crew constituted him a vice principal, and not the fellow servant of a brakeman. Judge Evans is said to have erred in refusing to follow the Tennessee decisions as to the law of fellow servants, not because there is any statute regulating the subject upon which the decisions were based, but because this action, being one for negligent death of the deceased, is an action which would at common law have been extinguished by the death of the injured person, and is now prosecuted only by virtue of a Tennessee statute which prevents such extinguishment. Upon this premise it is insisted that every decision of the supreme court of Tennessee determining under what circumstances a liability exists for a negligent killing is a decision construing, interpreting, and applying the Tennessee survival statute, and for that reason a decision to be followed by this court as a decision construing a local statute. That the construction given to a statute of a state by the highest court of that state is to be regarded and followed by this court as a part of the statute itself is well settled. The construction of the Tennessee supreme court of the Tennessee statute prescribing precautions to be observed by railway companies in order to prevent accidents in the operation of trains, and holding that contributory negligence by the plaintiff was not a bar to an action based upon a nonobservance of the statute, was

followed by this court as an obligatory determination of the meaning of the act. Byrne v. Railroad Co., 9 C. C. A. 666, 61 Fed. 605, 24 L. R. A. 693; Railroad Co. v. Roberson, 9 C. C. A. 646, 658, 676, 61 Fed. 592; Leffingwell v. Warren, 2 Black, 599, 17 L. Ed. 261; Bucher v. Railroad Co., 125 U. S. 582, 8 Sup. Ct. 974, 31 L. Ed. 795; Railway Co. v. McCann, 174 U. S. 586, 19 Sup. Ct. 755, 43 L. Ed. 1093. In the interpretation and construction of the Tennessee act providing for the survival of actions for the negligent death of a deceased person—the act by virtue of which this action was brought —we have never hesitated to follow the meaning placed thereon by the supreme court of the state. Railway Co. v. Hooper, 35 C. C. A. 24, 92 Fed. 820; Sanders' Adm'x v. Railroad Co., 49 C. C. A. 56, 111 Fed. 708. The question, therefore, for decision here, is, not whether the construction of the Tennessee survival statute by the supreme court of Tennessee will be followed by this court as authoritative, but whether the decisions relied upon as an interpretation of that statute are in fact such.

The act in question was passed in 1851, and was carried into the Tennessee Code of 1858, being now section 4025, Shannon's Code of Tennessee, and reads as follows:

"4025 (2291) 3130. Right of Action in Case of Injuries or Death.—The right of action which a person who dies from injuries from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children, or to his personal representative, for the benefit of his widow or next of kin, free from the claims of creditors. (1851-52, ch. 17; 1871, ch. 78, sec. 1.)"

Sections 4026 and 4027 provide that the action may be brought by the personal representative of the deceased, or by the widow, or, if no widow, then by the children. Section 4028 provides that, if the deceased had commenced an action, it may proceed after his death without revivor. Section 4029 is an amendment made by chapter 186 of the act of 1883, and reads as follows:

"4029. 3134. Measure of Damages.—Where a person's death is caused by the wrongful act, fault or omission of another, and suit is brought for damages, as provided for by sections 4025 to 4027, inclusive, the party suing shall, if entitled to damages, have the right to recover for the mental and physical · suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received. (1883, ch. 186.)"

The contention of the plaintiff in error is that the act "creates a liability on the part of the wrongdoer and in favor of the administrator unknown to common law;" that "the liability exists solely by the will of the legislature of Tennessee." "It is not," says the very learned attorney for the plaintiff, "a mere continuation of the common-law right of action for negligence which the deceased would have had if he had lived, and a removal of the bar which the common law interposed on the death of the injured person, as expressed in the maxim, 'Actio personalis moritur cum persona,' but it is an entirely new liability, and an entirely new cause of action." These statutes abrogating the common-law rule by which the right of action for a

personal injury died with the person are of comparatively recent origin, and vary in important particulars. In Dennick v. Railroad Co., 103 U. S. 21, 26 L. Ed. 439, it was said:

"The questions growing out of these statutes are new, and many of them are unsettled. Each state court will construe its own statute on that subject, and differences are to be expected."

1. The highest court of Tennessee has authoritatively construed the Tennessee act as not creating a new cause of action, but as simply preserving the decedent's right of action, which would otherwise be extinguished by his death. The original of these survival acts was the English act known generally as "Lord Campbell's Act," and the original of the American acts was that of New York, which latter act was subsequently copied by most of the American states. Both the English act and the New York act were peculiarly worded, and were construed as taking no account of the injury to the deceased in the damages recoverable, but only of the pecuniary loss of the persons entitled by the act to the benefit of the recovery. The Tennessee act does not copy either the New York or the English act, and has consequently received an entirely different interpretation. Thus, in one of the earlier cases under the act,—that of Railroad Co. v. Burke, 6 Cold. 45, 49,—it was said:

"The cause of action is the injury to Burke, and the right of action of the personal representatives is for that cause of action, and is the right of action Burke had, and could have prosecuted had he lived, and the damages recoverable are for that cause of action. The statutes of other states, which have been cited, * * * either by express terms or plain implication, give the next of kin a right of action or damages for the injury done them by the killing of the deceased. The Tennessee statute goes no further than to give the next of kin the damage that may be recovered by the personal representatives for the injury done his decedent."

In a number of cases following this case of Railroad Company v. Burke it has been held that, unlike the English act, and those worded as that, the Tennessee act simply abrogates the artificial rule of the common law by which personal actions die with the person. Jones v. Littlefield, 3 Yerg. 133; Governor v. McMannus' Adm'rs, 11 Humph. 152; Hall v. Railroad Co., Thomp. Tenn. Cas. 204; Railroad Co. v. Prince, 2 Heisk. 580; Fowlkes v. Railroad Co., 9 Heisk. 829; Trafford v. Express Co., 8 Lea, 96, 102, 109; Railroad Co. v. Smith, 9 Lea, 470–474. In Fowlkes v. Railroad Co., cited above, it is said:

"If an action be brought by the party himself, and he then dies of the injury before judgment, the effect of the statute is to prevent an abatement, and to allow the cause to proceed, notwithstanding the death; but not on account of the death. The cause of the action was the injury. And in such cases the action, after the death, is prosecuted for the same cause for which it was brought, and is the same action. In cases where no action is brought by the injured party himself, the statute allows the action to be brought by the representative. This could not have been done at the common law, and it is, therefore, in this sense, a new and statutory action. But it is brought for the same cause as if the injured party had himself brought the action."

Under Lord Campbell's act, as well as the New York act, and acts of other states following the peculiar verbiage of the English

act, "the injury to the deceased was not an element in the damages recoverable, but only the pecuniary loss of the relative entitled to the benefit of the recovery." But under the Tennessee statute the matter was quite different, and in Trafford v. Express Co., cited above, the Tennessee decisions are considered, and the conclusions reached in Fowlkes v. Railroad Co., cited above, reaffirmed, Judge Cooper saying:

"It seems to me clear that the legislature, by the statutory provisions under consideration, intended to abolish the rule of common law touching the abatement of rights of action for personal torts producing death, and to provide that the right of action of the person injured, subject to his control during his life, should survive to his widow and children or personal representatives, as the case may be; and that the only damages that can be recovered in any action under the statutes are the damages which the deceased was entitled to recover if he had sued. In this view the statutory provisions are simply those of the abatement and revivor of the particular class of actions, the recovery, in the event of death of the person injured, without a different valid disposition on his part, being distributable as other personal property of the deceased, free from the claims of creditors. The provisions dovetail exactly into our general system of laws regulating the rights of action of deceased persons. There is no anomaly either in the character of the recovery or in its distribution."

In Railroad Co. v. Smith, cited above, the court said:

"It is the same action, whether it be brought by the injured party in person or by his administrator after his death."

Any attentive consideration of the decisions of the Tennessee supreme court prior to the amendment of the act made by chapter 186, act of 1883, being now section 4029, Shannon's Code, as set out above, will make it plain that the damages sustained by those relatives having a pecuniary interest in the life of the deceased were wholly disregarded as an element for consideration in determining the damages recoverable under the act. The effect of the act of 1883 was to enlarge the recovery so as to include therein the pecuniary damage sustained by those for whose benefit the action survived. Two separate actions may at the common law arise from the same injuries,—one in favor of the person injured and the other in favor of the relative having a direct pecuniary interest in the life and services of the injured. Both rights of action were extinguished by the death of the person injured. Now, this act of 1883, instead of allowing the widow and children of the deceased to prosecute a separate action to recover the pecuniary damage peculiar to themselves, enlarged the measure of damages recoverable by the representatives of the deceased so as to permit the recovery in that action of "the damages resulting to the parties for whose use and benefit the right of action survives." The effect of this amendment upon the original action has more than once been before the Tennessee court, and while, in Railroad Co. v. Pounds, 11 Lea, 127, it was said that its effect was to create "a new or additional cause of action," yet in subsequent cases the observation was retracted, and the act as amended held not to create a new cause of action, but simply to enlarge the damages recoverable in the action of the deceased or by his representative so as to include as an element the pecuniary loss of those for whom the action survived. Loague v.

Railroad, 91 Tenn. 458, 19 S. W. 430; Holston v. Iron Co., 95 Tenn. 521, 32 S. W. 486; Railroad v. Johnson, 97 Tenn. 667, 37 S. W. 558; Whaley v. Catlett, 103 Tenn. 347, 351, 53 S. W. 131. In Whaley v. Catlett, cited above, is found an elaborate and authoritative construction of the act under which the suit is brought, in which the question for decision was whether the statute of limitations of one year barring actions for personal torts was applicable to a suit brought after more than one year by the infant children of the deceased against the wrongdoer. "It is evident," said the court, "that, if the right of action be that of the deceased, and commenced to run when the injury was done, the minority of the beneficiary will not be material, as the statute will continue to run, and will not be suspended during minority; otherwise, if the right of action be an independent one in the minor, not derived from the deceased, the statute would not commence to run during the minority, the cause having arisen while the claimant was a minor." It was held by the whole court that the action was barred. Among other things, Justice Wilkes, a very able and learned judge, who wrote the opinion of the court, said:

"The question narrows itself to this: Is the action which the statute authorizes that of the deceased, or is there under the acts a new, substantive, original cause of action in the widow, children, or next of kin, independent of that existing in and passing from the deceased, though resting upon or growing out of the same injury? In other words, does the deceased's cause of action alone survive, and pass to the parties named, or does the statute create a new cause of action in their behalf and for their benefit? We are of the opinion that a careful reading of the statutes can lead to no other conclusion than that they provide alone for the continued existence and passing of the right of action of the deceased, and not for any new, independent cause of action in his widow, children, or next of kin. Section 4025, Shannon's Code, refers to it as the right of action which the deceased would have had in case death had not ensued, and provides that it shall not abate or be extinguished, but shall pass to his widow, etc. It does not provide for or refer to any new cause of action arising or coming into existence in their favor. It is alone by virtue of these statutes that a right of action exists in the widow, children, or next of kin at all for the unlawful killing of the deceased, and this right exists under the statute not because it arises directly to them, in their own right, but because it passes to them in the right of the deceased."

Although the cause of action is that of the deceased, the damages recoverable being enlarged so as to also include those sustained by the relatives for whom the action is maintained, it is, nevertheless, in a very true sense a statutory action, which would not be maintainable but for the statute. Being, however, the cause of action of the deceased, there can be no recovery unless he himself could have recovered for the injury if the death had not ensued. As said in Haley v. Railroad Co., 7 Baxt. 239–242:

"The deceased's right of action, with all its incidents, passes to the personal representative, and must be treated as if the injured party had brought it."

In accordance with this theory of the nature of the action, the Tennessee supreme court have never drawn any distinction whatever between actions brought by the injured person himself, where death did not ensue, and actions brought by one or the other of the persons authorized by the statute to maintain the suit. The question of what was or what was not negligence, or what was or what was

not the effect of contributory negligence, except in cases arising under the statute prescribing precautions to be observed in the operation of railway trains, and the question of who were or who were not fellow servants within the rule of respondeat superior, have always been, and are now, questions of general law in Tennessee; and, whether the injured person dies from his injuries or not, the liability of the wrongdoer depends upon the same general principles of general, and not local, law.

2. But whether the act be regarded as creating a new cause or right of action or as simply abrogating the common-law rule by which actions for personal injuries are extinguished by death, is of no vital importance, for in neither event has the Tennessee court made the statute the basis of any decision by that court as to the liability of an employer for the injury of one servant through the negligence of another. It is to be particularly noticed that prior to the enactment of the survival statute there had been no decisions of the Tennessee supreme court defining who were or who were not fellow servants, or declaring the circumstances under which an employer is responsible for the negligent injury of one employé by another in the same common service. There is, therefore, no basis for the suggestion that the legislature, when enacting the survival statute, intended to adopt the law as defined and declared by the existing decisions of the Tennessee supreme court as a statutory rule of liability where death resulted from the wrongful act. Fox v. Sandford, 4 Sneed, 47, 67 Am. Dec. 587; Goggin v. Railroad Co., Thomp. Tenn. Cas. 142; Railroad Co. v. Elliott, 1 Cold. 611, 616, 78 Am. Dec. 506; Haynes v. Railroad, 3 Cold. 222; Railroad Co. v. Carroll, 6 Heisk. 347; Railroad Co. v. Bowler, 9 Heisk. 866; Railroad Co. v. Wheless, 10 Lea, 741, 43 Am. Rep. 317; Railway v. Handman, 13 Lea, 423; Bradley v. Railway, 14 Lea, 374; Railroad Co. v. Lahr, 86 Tenn. 340, 6 S. W. 663; Mining Co. v. Davis, 90 Tenn. 718, 18 S. W. 387; and numerous other cases. An examination of the cases cited will show that the supreme court of Tennessee has always treated the question of the liability of an employer for an injury sustained by one servant through the negligence of another in the same service as a question of general, and not local, law, and that, while recognizing and enforcing the common-law principle exempting the master from liability to a servant for the negligent conduct of another servant in the same service, it has regarded the principle as not applying when one servant was placed in direct control over another as the representative of the master in the particular matter. In Railway v. Handman, cited above, the suit was by an administrator, whose decedent had been a fireman in the employment of the railroad company. It was claimed that the deceased fireman had come to his death by the explosion of a locomotive upon which he was serving as a fireman, caused by the negligence of the engineer upon the same engine. A charge that the company would be liable for the negligent death of a fireman caused by carelessness of the engineer on same engine was held erroneous.

"In this state," said Judge Cooper, speaking for the court, "we have adopted the general rule, established by the authorities, regulating the relative rights

of master and servant. The servant, on entering into service, knows, or is taken to know, that there are extraordinary dangers inseparable from such service, which human care and foresight cannot always guard against. If he voluntary engages to serve in view of all the hazards to which he will be exposed, it is well settled that, as between himself and his employer, he undertakes to run all the ordinary risks of the service; and this includes the risk of injuries, not only from his own want of skill and care, but likewise the risk of injuries from the negligence of his fellow servants. Per McKinney, J., in Railroad Co. v. Elliott, 1 Cold. 611, 616, 78 Am. Dec. 506. The qualifications of the rule—some of them peculiar to this state—need not be particularly noticed, but are illustrated by Railroad Co. v. Carroll, 6 Heisk. 347; Guthrie v. Railroad Co., 11 Lea, 372, 47 Am. Rep. 286; Railroad Co. v. Gurley, 12 Lea, 46; Railroad Co. v. Bowler, 9 Heisk. 866."

After referring to Fox v. Sandford, 4 Sneed, 47, 67 Am. Dec. 587, and Railroad Co. v. Elliott, 1 Cold. 611, 616, the opinion proceeds as follows:

"These cases not only settle the general principle which regulates the servant's right of recovery against the master, but directly meet the point which has been suggested that the principle does not apply where the injury results from the negligence of a co-servant who is the immediate superior of the injured servant. The 'foreman of the job,' in Fox v. Sandford, was the immediate superior of the plaintiff, a hand hired to work on that job. The engineer of the locomotive in the case of Railroad Co. v. Elliott, was the immediate superior of the plaintiff, a fireman, or assistant fireman, on the same engine. The mere fact that the negligent servant is, in his grade of employment, superior to the servant injured, does not take the case out of the rule. Nor does the mere fact that the negligent servant is the equal or the inferior in grade of the injured servant. Ragsdale v. Railroad Co., 3 Baxt. 426. They are still fellow servants in the common service, and each must take the risk of the negligence of the other. 2 Thomp. Neg. 1026, 1028, 1034. And it has been expressly held by the other courts that an engineer and foreman, who work together at or on the same engine, are fellow servants within the rule. Jones v. Yeager, 2 Dill. 64, Fed. Cas. No. 7,510; Caldwell v. Brown, 53 Pa. 453. In order to charge the master, the superior servant must so far stand in the place of the master as to be charged, in the particular matter, with the performance of a duty towards the inferior servant, which, under the law, the master owes to such servant. 2 Thomp. Neg. 1031. 'In order to recover,' says Judge McFarland, 'the plaintiff must show that his injury resulted from the carelessness or want of skill of some one who, in the particular matter, stands in the place of the master.' Railroad Co. v. Wheless, 10 Lea, 741, 748, 43 Am. Rep. 317. See, also, Iron Co. v. Dobson, 7 Lea, 367, the opinion in which is delivered by the same eminent judge. The Elliott Case, as we have seen, clearly illustrates the distinction between the mere personal negligence of a superior fellow servant and his negligence in a matter in which he stands in the place of the master, who, under the law, owes a duty in the matter to the servant. And another exception to the rule is where the injury to the inferior employer is occasioned by the direct order of the immediate superior in a sudden exigency. This exception is illustrated by the cases of Railroad Co. v. Bowler, 9 Heisk. 866, and Railroad Co. v. Duffield, 12 Lea, 63, 47 Am. Rep. 319. In the case before us, the engineer gave no order to the intestate, and exercised no authority over him which contributed to the injury. He did not stand in the place of the master, so far as the particular negligence in question was concerned, for the performance of any duty which, under the law, the master was bound to perform for the protection of the servant. He was simply negligent in complying with a rule of the company adopted for his guidance. It was a case of personal negligence, such as the intestate, in accepting his own employment, undertook to risk. Whether the negligence could in any sense be considered a proximate cause of the particular injury, it is necessary to consider."

In Railroad Co. v. Smith, referred to above, the suit was for the negligent death of one servant by the alleged negligence of another. The court, among other things, said:

"It has been held by this court that, as between a railroad company and its employés, the former's liability for injuries from the misconduct or negligence of its agent must be determined, not by our statutes, but by common-law principles."

The question as to whether the conductor of a train occupied such a position of responsibility and control over the other members of the crew as to stand as a representative of the company, and not a fellow servant, first came before the supreme court of Tennessee in 1893, in the case of Railroad Co. v. Spence, 93 Tenn. 173, 23 S. W. 211, 42 Am. St. Rep. 907. That the relation of fellow servant did not exist was determined, not by reference to any statute, rule, or custom, or usage of a local character, but upon common-law principles. Thus, after stating the general rule of nonliability for the negligent injury of one servant by another in the same common service Justice McAlister proceeds to state the circumstances under which the exemption does not exist. After referring to Railroad Co. v. Lahr, 86 Tenn. 340, 6 S. W. 663, and Mining Co. v. Davis, 90 Tenn. 718, 18 S. W. 387, he quotes from Judge Cooper in Railway v. Handman, 13 Lea, 423, as follows:

"In order to charge the master, the superior servant must so far stand in the place of the master as to be charged in the particular matter with the performance of a duty toward the inferior servant which, under the law, the master owes to such servant."

Applying the principle stated and illustrated in earlier cases to the case in hand and to the duties shown to rest upon a conductor in control of a train, the court reached the conclusion that:

"A conductor placed in charge of a freight train, with authority to direct and control its movements, is a representative of the company, charged with the performance of a duty which the company owes to the public and its employés on the train."

For the particular result the court rests the case upon Railroad Co. v. Ross, 112 U. S. 390, 5 Sup. Ct. 184, 28 L. Ed. 787, and Railroad Co. v. Keary, 3 Ohio St. 201. Under such circumstances there can be no room for the contention that we are bound to follow the decisions of the supreme court of Tennessee in respect to the question of who are or are not fellow servants, for the basis of those decisions is not a statute, but the general common law.

In Byrne v. Railroad Co., 9 C. C. A. 666, 677, 61 Fed. 605, 24 L. R. A. 693, Judge Taft drew for this court a distinction which is quite obvious. The question there was the liability of a railroad company for the failure to observe a statute of the state regulating the operation of its trains and the effect of the plaintiff's own negligence under that statute in defeating his action. The binding effect of Tennessee decisions in respect to the consequences of contributory negligence upon such actions was under consideration. In respect to this the court, speaking by Judge Taft, said:

"The question whether we are bound by the decisions of the supreme court of the state of Tennessee as to the effect of contributory negligence in

statutory actions depends on the basis given by that court for its conclusion. If the statute is held to be merely declaratory of the common law both in its requirements and in the liability imposed for failure to observe it, and the plea of contributory negligence is allowed only in mitigation of damages, because, in the view of the supreme court of Tennessee, that is the only effect it could have in an action for common-law negligence, we conceive that the effect of contributory negligence in such a case would be a question of general common law, with respect to which we might exercise an independent judgment. But if the rule of the state supreme court grows out of the peculiar liability imposed by the statute as distinguished by that imposed for negligence at common law, then it is the legitimate effect of a construction of a state statute by the highest tribunal of the state, and we are, of course, bound by it."

To the same effect is the later case of Peck v. Tie Co. (decided by this court at its June session, and not yet officially reported) 116 Fed. 273.

We can but conclude that the question of the liability of the railroad company for the negligent acts of a conductor of one of its freight trains resulting in the injury and death of a brakeman on the same train is a question of general law, and in no way involved in the interpretation of the statute which preserves the right of action from extinguishment. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772. The precise question having been decided conversely to the conclusion of the Tennessee court by the supreme court of the United States in Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181, where Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, was overruled, we are under obligation to follow this latter decision as authoritative upon us. The result is that the judgment of the court below must be affirmed.