MABRAY v. UNION PAC. R. CO.

SMITH v. SAME.

SAUTER v. SAME.

COEN v. SAME.

JACKSON v. SAME.
Nos. 10165–10169.

District Court, D. Colorado.
Dec. 9, 1933.

T. E. Munson, of Sterling, Colo., for plaintiffs.

C. C. Dorsey and E. G. Knowles, both of Denver, Colo., for defendant.

KENNEDY, District Judge (of Wyoming, sitting in the District of Colorado).

In each of the above-entitled causes demurrers were filed by the defendant, and, inasmuch as said causes grew out of the same transaction, to wit, a highway accident, they were consolidated for the purposes of a hearing upon the demurrers. The cases were orally argued and voluminous briefs submitted. They were first filed in the state court and removed to this court upon the petition of the defendant. The plaintiff Mabray was the driver of the automobile in question, and the other four plaintiffs in the separate causes of action were the passengers in the automobile at the time of the accident.

The demurrers challenge the sufficiency of the several complaints to constitute causes of action and therefore require an examination of those pleadings. As all the complaints set up the same substantive facts and rely upon the same alleged acts of negligence they may be considered together, with the exception that the plaintiff Mabray was the driver of the automobile and the other plaintiffs were passengers therein, which distinction will be noted later.

Taking up the Mabray complaint, its contents may be summarized substantially as follows: After pleading the corporate capacity of the defendant as a corporation of the state of Utah, but operating a line of railroad in the state of Colorado, it is alleged that on November 6, 1932, the plaintiff attended a meeting of the Republican Party at which the President of the United States was the principal speaker, and that on the morning of November 7, 1932, he borrowed a car and invited the other respective plaintiffs to ride back with him to their respective homes in Sterling, Colo., which invitation was accepted. The car so borrowed was practically a new one and in perfect condition. The plaintiff had driven a car for approximately twenty years, had a license to drive, and had driven over 150,000 miles and understood in detail all the requirements of handling a car for the safety, not only of himself, but of the passengers riding with him. He and his fellow passengers started home about 3 a. m. on November 7th and traveled upon a street known as Brighton boulevard leading out of the city of Denver, which was one of the main highways to the towns and cities in the north and east portions of the state of Colorado. Brighton boulevard was originally known and designated as Wewatta street, but at the time of the accident was known as Brighton boulevard. While traveling along said Brighton boulevard at the point where it crosses the defendant's tracks, the automobile encountered a freight train operated by the employees of the defendant, which train was the ordinary stock train with cars so constructed that lights from the opposite side of the train would be easily visible to travelers on the other side thereof. The night was dark and the view slightly obscured by reason of snow and sleet, and the highway was an oiled highway, on which lights from cars were impaired and visibility obstructed. Every precaution within the power of the plaintiff to avoid injury was used to prevent a collision with the train, but the railroad company knowing of the conditions existing failed to make any provision to warn the traveling public of the danger which was brought about by the blocking of the main thoroughfare out of the city by the installation of any warnings, by the ringing of bells, by the installation of red lights, or by having present at such crossing a watchman to warn the traveling public of the danger existing. By reason of the alleged negligence, the car which was being driven by plaintiff came in contact with said train, resulting in plaintiff's serious injury. It is further alleged that the Municipal Code of the City of Denver, at section 1645, provides that any one operating a railroad with-

in the corporate limits of the city shall cause to be displayed, at every point or points where a railroad track or tracks cross any street, alley, or other public highway, red signal lights from twilight to daylight, with a designation, among others, of the crossing in question; and again, in section 1650, that a flagman or safety appliances shall be maintained at any other place in said city where the operator may deem proper for the safety of the public, with certain exceptions. In section 1661 it is provided that it shall be the duty of the engineer or other person in charge of any locomotive, on approaching any crossing, to ring the locomotive bell to warn all persons of the approach of such locomotive and to continue to ring such bell until such locomotive and train of cars shall have cleared such crossing. There was no light to warn or signal bell rung, and no flagman was maintained at the time the automobile approached the crossing. The night was dark, sleet and snow obscured the vision of the driver, and the highway was oiled so that the lights upon the automobile did not properly function. By reason of the failure of the defendant to comply with the laws, rules, and regulations of the city and county of Denver, the automobile came in contact with the train, resulting in the injury complained of. It was the custom of the defendant to maintain a flagman at said crossing between twilight and daylight to protect the traveling public from danger, but that upon this particular occasion, at 3 o'clock on the morning of the accident, the flagman abandoned his work and went home, leaving the crossing wholly unprotected. It is again pleaded that the crossing was not protected with a flagman, a bell, or a red light, and, as a result of this alleged neglect upon the part of the defendant, the automobile crashed into the train which was upon the crossing. Then follows in the complaint a description of plaintiff's occupation, earning capacity, together with the injuries suffered by him, which it is not necessary to specifically notice in considering the demurrers.

It is apparent that reliance for the cause of action as to negligence of the defendant is sought to be based upon two grounds: (1) That the defendant at the time of the accident was violating certain specific ordinances of the city of Denver, and (2) that it was negligent in failing to have a watchman on duty at the time.

▇ There seems to be some discrepancy in the complaint in the attempted quotation of the ordinances relied upon, which probably has come about through inadvertence, which quotations in comparison with the authenticated copy of the ordinances seem in some respects to change the import from that attempted to be conveyed by the pleader, and yet it may not be of sufficient importance to take the necessary time to analyze the difference. The substance of the plea attempted to be set up by plaintiff is that under the ordinance certain signals and warnings were required to be set up at the crossing in question. If so, reliance must be made upon the theory that it is covered by an ordinance which prescribed these crossing signals on Wewatta street, which had been changed to Brighton boulevard. There is no suggestion in the complaint as to whether the ordinance was adopted before or after the change of the street name, but the court takes judicial notice of the fact that there was at the time of the accident still a different street in the city of Denver known as Wewatta street. Necessarily we are left in the dark as to whether or not the ordinance as existing applied to Brighton boulevard. Consequently there is a degree of obscurity in the allegations of the petition as to whether the ordinance pleaded applies to the crossing in question.

There is likewise considerable doubt about the sufficiency of the pleading in regard to the maintenance of a flagman at the crossing, inasmuch as it is not alleged that plaintiff relied upon the presence of any flagman, and particularly inasmuch as it is not pleaded as to how the presence of a flagman would have avoided the accident.

▇ However, assuming that the allegations of the complaint are sufficient to import a charge of negligence, we are still confronted with the necessity of examining the circumstances surrounding the accident and the law applicable to discover whether or not even then there is actionable negligence on the part of defendant shown by the pleading. In this examination we meet the rule that a railroad company has a right to occupy a crossing in the operation of its business, but not for an unreasonable or unlawful length of time, and that such obstruction is in itself sufficient notice of danger so that the railroad is not bound to give any further warning. Likewise, after a train has reached the crossing the duty of a flagman ends as to that train, since then the train itself is a sufficient warning.

For the sake of brevity, some excerpts along the line stated are taken from Corpus Juris, the text being well supported by decisions. In 52 C. J. p. 189, the language is as follows: "In general the railroad company owes the duty to the public not to ob-

struct a crossing unnecessarily or for an unreasonable period, which duty is non-assignable. So a railroad company may be liable for injuries caused by an obstruction where it is erected and maintained without legal authority, or where it amounts to negligence, as where the obstruction causes delay with a resultant collision, or where the railroad company allows its train or cars to remain on the crossing unnecessarily, or for an unreasonable length of time, by reason of which injuries are received by one who attempts, with due care, to cross, or by one who is precluded by the obstruction from attempting to cross. In the event that the railroad company has violated no duty to persons using a public crossing, in respect of the existence of an obstacle or obstruction, it is not liable for injuries sustained as the result of such obstacle or obstruction. So in general a railroad company has the right to stop its train or leave its cars at a public crossing for a reasonable time and for a proper purpose; it is not chargeable with negligence for so doing, and is not liable for injuries caused by such obstruction."

Again, at page 190, the rule is stated: "The view generally taken is that the presence of a train or cars at a crossing is sufficient notice of obstruction and of danger, that the railroad company is not bound to give any further warning as to the presence of such obstruction, and that the trainmen have a right to assume that the operator of the vehicle will act in a reasonable way to avoid a collision. So even when it is dark the mere failure to give warning of such obstruction is not necessarily an act of negligence, notwithstanding, according to some cases, the obstruction is unreasonably prolonged, and the railroad company is not chargeable with negligence for failure to give a warning where conditions are not such that the employees in charge of the train, in the exercise of reasonable care, should anticipate that because of the darkness persons traveling along the highway in vehicles properly equipped with lights and operated with due care would be likely to come into collision with the obstruction. There is, however, authority for the view that conditions may be such as to require a warning where, in the darkness a car obstructs the crossing. Where, in violation of a municipal ordinance, the railroad company fails to place a light upon a temporary obstruction in the street, the company may be liable for an injury resulting from such failure."

Again, at page 205, the text reads: "Negligence on the part of the railroad company is not established by the fact that an automobile collides with a train standing on a crossing unprotected by a flag or light, or where signal flags are absent, where such flags are for the guidance of employees and not travelers upon the highway."

Again, on the same page appears: "After the train has reached the crossing, the duty of the gatekeeper or flagman ends as to that train, and such person is not negligent in then leaving the post of duty, since the train itself is then a sufficient warning. A flagman is not standing at the crossing when he is at one end or at the side of a crossing over a large number of tracks, but he is not expected to look both ways in the street at once or to stand at both sides of the crossing."

All crossing signals are intended to protect the traveler against approaching trains and have been so regarded by the courts. And manifestly a flagman with a light on the opposite side of a train upon a crossing from that of an approaching vehicle would afford no efficient signal of danger. If this were required, in order to be efficient, it would be necessary for a railroad at every crossing where a flagman is required to furnish two flagmen so that each might warn approaching vehicles on either side of the train obstructing the crossing.

So that in view of the prevailing weight of opinion as expressed in the foregoing texts, admitting either that the ordinance required signals or the common-law duty of the defendant required a flagman at the crossing in question, they could not be applied to the circumstances in the cases at bar, where the cars upon the crossing were themselves the necessary notice of obstruction. Considered in this view, the allegations of the petition do not set up a condition which imputes primary negligence to the defendant.

But there is another element entering into the case which is likewise apparent upon the face of the complaint, and that is the question of contributory negligence. Under the state law of Colorado, passed I am informed in 1931—the operation of motor vehicles on the highways, municipalities not being excepted—there is established as a matter of law a standard of conduct on the part of highway travelers. By the provisions of this statute, which from the briefs may be noted as the Session Laws of 1931, chapter 122, p. 532, at section 73, it is provided that any person driving a vehicle upon the highway shall drive the same at a careful and prudent speed not greater or less than is reasonably proper,

having due regard to the traffic, surface of the highway, the weather condition, and the condition of the vehicle he is then operating, and of any other conditions then existing. No person shall drive any vehicle upon the highway at such speed as to endanger the life, limb, or property of any person, nor at such speed as to prevent him retaining complete control of said vehicle so as to be able to slow or stop the same in order to avoid a collision with any other vehicle then within the range of his vision. It is then provided how headlights on automobiles shall be arranged so as to provide sufficient light to reveal a person on the highway 200 feet ahead, but that when it is permissible to dim head lamps they shall be arranged so as to clearly disclose a person 75 feet ahead.

This being the standard of duty which is prescribed by the laws of Colorado in which state the accident occurred, we must assume that, if the plaintiff were obeying the law, he would be able to discern the obstacle upon the crossing 200 feet ahead if he were driving with full lights, or 75 feet ahead if he were driving with dim or tilted lights, or at any lesser distance if vision were somewhat obscured, and that his driving at the time must have been of such a character that he would have his car under control and capable of being stopped within the range of his vision. This law, taken into consideration with the circumstances surrounded by the scene of the accident as contained in the complaint, that his lights were functioning efficiently, that there was inferentially a straight road upon which the plaintiff was traveling, that there would therefore have been revealed the train upon the crossing 75 feet ahead, or even at a lesser distance, then, had his car been operated so as to be capable of being stopped within the range of his vision, there is nothing left to attribute as the cause of the accident than that the car was not kept within the control of the driver in regard to permissible speed so as to be efficiently stopped, or that no lookout was kept.

The cases upon crossing accidents are legion, and they disclose many different situations which, differing under individual circumstances, may relieve plaintiffs from, or charge them with, contributory negligence. To the average person, the circumstance of one driving a motor vehicle with proper headlights efficiently adjusted and lighted on a straight and level highway running into an obstacle as large as common stock cars of a railroad occupying the crossing leaves the natural inference of too rapid driving or careless observation, and we believe the courts have so viewed it.

It seems to be generally thought by the courts that the law in regard to crossing accidents has been somewhat clarified by the opinion of Mr. Justice Holmes in Baltimore & Ohio Railroad Co. v. Goodman, 275 U. S. at page 69, 48 S. Ct. 24, 25, 72 L. Ed. 167, 56 A. L. R. 645, where it is said: "We do not go into further details as to Goodman's precise situation, beyond mentioning that it was daylight and that he was familiar with the crossing, for it appears to us plain that nothing is suggested by the evidence to relieve Goodman from responsibility for his own death. When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true as said in Flannelly v. Delaware & Hudson Co., 225 U. S. 597, 603, 32 S. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts. See Southern Pacific Co. v. Berkshire, 254 U. S. 415, 417, 419, 41 S. Ct. 162, 65 L. Ed. 335."

However, we are here more directly concerned with an accident in which an automobile is driven into the side of a train standing or slowly moving across a railroad crossing. In this respect also the courts have spoken. In Phillips v. Davis (C. C. A. 3) 3 F.(2d) 798, at page 799, 40 A. L. R. 1241, the point under consideration is discussed by Circuit Judge Woolley in the following language:

"The plaintiffs cannot be exonerated from the charge of contributory negligence on the ground that the night was dark and rainy and the street was wet, nor on the ground that they were required to observe the dimmer ordinance of the City of Scranton. They were bound to operate the car with due regard to these conditions and to the ordinance as well.

"The Supreme Court of Pennsylvania said in Serfas v. L. & N. E. R. Co., 270 Pa. 306, 113 A. 370, 14 A. L. R. 791, that it is the duty of one 'traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision. ⁴ * * We have never held darkness an excuse for failure to perform this absolute duty.' Besides requiring proper headlights the law imposes the duty of properly using them. If, when they stopped twenty-five feet from a known railroad track, and, looking, saw nothing with their low lights, the circumstance of darkness and proximity to a point of danger should have suggested the ordinary care of turning on the full lights for a moment. This duty, in the situation, was paramount to that of observing the dimmer ordinance. The two duties were not in conflict. Increasing the light was but a natural precaution, yet it was one which involved the proper use of lights and, accordingly, the degree of care which the law required in the circumstances.

"Assuming that, under the Pennsylvania Act of March 20, 1845 (P. L. 191 [see 67 PS § 452]), and under the Ordinance of the City of Scranton (No. 6), the railroad company was negligent in allowing its train to block the crossing for an unreasonable length of time, whether such negligence be prima facie or negligence per se (Crowley v. P. R. Co., 231 Pa. 286, 80 A. 175; Todd v. Railway Co., 201 Pa. 558, 560, 51 A. 332; 33 Cyc. 931), the proximate cause of the accident was obviously the lack of care exercised by the plaintiff driver and by his wife, who, taking part in his conduct, 'joined (him) in testing a danger which she knew.' This was contributory negligence on the part of both. Senft v. Railroad, 246 Pa. 446, 92 A. 553; Wachsmith v. Railroad, 233 Pa. 465, 82 A. 755, Ann. Cas. 1913B, 679, distinguished from Clamper v. Philadelphia, 279 Pa. 385, 124 A. 132, on the facts."

In Brown v. Southern Railroad Co. (Pennington v. Southern R. Co.), 61 F.(2d) 399, at page 400 (C. C. A. 5), it is said:

"We have had occasion to consider this same accident in the case of Smith v. Southern Railway Co., 53 F.(2d) 186. In that case upon practically identical allegations of fact we held that the driver of the car was lacking in ordinary care in failing to have his machine so under control as to be able to stop it before colliding with a stationary obstruction in the roadway ahead, which before it was reached was disclosed by the automobile lights. Baltimore & Ohio R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645; Herron v. Southern Pacific Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857.

"That Pennington was a passenger does not alter the situation in his favor. He was not chargeable with the negligence of the driver although he might have been guilty of contributory negligence barring recovery if by failure to exercise ordinary care he did not see the obstruction and did not warn the driver in time for its avoidance. Bradley v. Mo. Pac. R. Co. (C. C. A.) 288 F. 484; Garrett v. Pennsylvania R. Co. (C. C. A.) 47 F. (2d) 10. As the defense of contributory negligence would depend upon pleading and proof by appellee, we may pass that without decision. However, there is no doubt that the negligence of the driver was the proximate cause of the accident and therefore the passenger could not recover. Orton v. Pennsylvania R. Co. (C. C. A.) 7 F.(2d) 36; Brinson v. Davis, 32 Ga. App. 37, 122 S. E. 643; Cent. of Ga. R. Co. v. Adams, 39 Ga. App. 577, 147 S. E. 802; Tidwell v. Atlanta, B. & C. R. R., 42 Ga. App. 744, 157 S. E. 535.

"The demurrers were properly sustained."

In Calloway v. Pennsylvania R. Co. (Scheetz v. Pennsylvania R. Co.), 62 F.(2d) 27, at page 28 (C. C. A. 4), the following significant statement appears in the decision of the court: "From the circumstances and the evidence, it seems to us that, had the plaintiffs used even the slightest degree of care before starting across the tracks, they could have avoided the accident. They could at least have avoided running into the railroad engine running at the very slow speed at which it was running at the time."

In the recent case by the Supreme Court of the United States, Southern Railway Co. v. Walters, 284 U. S. 190, at page 194, 52 S. Ct. 58, 59, 76 L. Ed. 239, Mr. Justice Roberts, in speaking for the court, says: "There is no proof whatever that the alleged failure to stop before entering the crossing was the proximate cause of the plaintiff's injury. Such direct testimony as there is on his behalf indicates a collision between him and the side of the train after the front part of it, which in this case was the rear end of the tender, had passed him; and all of the evidence both for plaintiff and for defendant is consistent with this view of what happened. It is clear that on this ground also a binding direction

in favor of the defendant should have been given."

In the light of these decisions, if the reasoning be adopted, the complaint shows upon its face that the plaintiff was guilty of contributory negligence, which, upon the facts as pleaded, prohibits a recovery.

Nor are the other plaintiffs under these and other authorities in a better position than was Mabray, the driver. Even admitting the negligence of the defendant, where the negligence of the driver is the proximate cause of the accident, neither the driver nor his passengers can recover. It was said by the late Judge Cotteral, speaking for a court of our circuit, consisting of Judges Lewis, Cotteral, and McDermott, in Summers v. Denver Tramway Corporation (Rice v. Denver Tramway Corp.), 43 F.(2d) 286, at page 287 (C. C. A. 10): "Appellants as guests in the automobile, with their opportunity to observe whether a car was approaching, had the duty to exercise reasonable care in their situation for their safety, but they gave no heed to the danger, and they were undoubtedly negligent in not keeping a lookout to discover the approaching car, and in some way warn the driver of the fact, so that he might avoid the collision. Davis v. Chicago, R. I. & P. R. Co. (C. C. A.) 159 F. 10, 16 L. R. A. (N. S.) 424; Brommer v. Pennsylvania R. Co. (C. C. A.) 179 F. 577, 29 L. R. A. (N. S.) 924; Philadelphia & Reading R. Co. v. LeBarr (C. C. A.) 265 F. 129; Bradley v. Missouri Pac. R. Co. (C. C. A.) 288 F. 484; Noble v. Chicago, M. & St. P. Ry. Co. (C. C. A.) 298 F. 381; Southern Ry. Co. v. Priester (C. C. A.) 289 F. 945; Chicago & E. I. R. Co. v. Sellars [(C. C. A.) 5 F.(2d) 31], supra; Parramore et al. v. Denver & R. G. W. R. Co. (C. C. A.) 5 F.(2d) 912." See, also, cases above cited on the previous point.

But counsel for plaintiffs attempt to suggest the rule that a law concerning contributory negligence as laid down by the highest court of the state in which the accident occurred should be accepted and adopted rather than the applicable law laid down by the federal courts. This is apparently contrary to the general rule. Since the decision of the Supreme Court of the United States in Herron v. Southern Pacific Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857, which held that even the constitutional or statutory provisions of a state do not control a federal judge in passing upon questions of contributory negligence in harmony with the rules laid down by the federal courts, it can scarcely be contended that a federal judge is bound by the decisions of a state court, unless they are based upon some construction of a state statute in a limited class of cases. This thought is aptly stated in the language of Judge Walter H. Sanborn, sitting with Judges Lewis and Pollock, in Parramore v. Denver & R. G. W. R. Co., 5 F.(2d) 912, at page 914 (C. C. A. 8), where this learned jurist says: "But that decision was not a construction or interpretation of the statute on which the present action is based. It was a decision on a question of general law, the question of contributory negligence, and in the consideration of that and other questions of general or commercial law the national courts are not bound by or required to follow the decisions of the state courts. On the other hand, the power is granted to them and the duty is imposed upon them, in cases in which, as in this case, their jurisdiction is properly invoked, to consider and decide questions of general and commercial law, with proper respect and esteem for the opinions of the state courts, but nevertheless as their own knowledge, wisdom, and judgment dictate. The court below was not required to follow the decisions of the Supreme Court of Utah upon the question of contributory negligence, or upon the question of the submission of the question of contributory negligence to the jury, but it was required to determine these questions by its own knowledge and judgment. 2 Foster's Federal Practice (3d Ed.) p. 880, § 375; 40 L. R. A. (N. S.) 441; Elliott v. Felton, 119 F. 270, 278, 56 C. C. A. 74; Hemingway v. Illinois Cent. R. Co., 114 F. 843, 846, 52 C. C. A. 477; Beutler v. Grand Trunk Railway, 224 U. S. 85, 87, 32 S. Ct. 402, 56 L. Ed. 679. This case falls far within the rule of law tersely stated in 40 L. R. A. (N. S.) 441, in these words: 'State court decisions are not conclusive upon the federal courts as to questions which, though arising in a statutory action for death, are not distinctive or peculiar to that character of actions.' "

But in addition, from the examination of the cases cited by the counsel for plaintiff from the state of Colorado, I have been unable to find that the rule contended for by plaintiff, that in all cases the question of contributory negligence is for the jury, has ever been promulgated. In the case chiefly relied upon, Colorado & S. R. Co. v. Honaker, 92 Colo. 239, 19 P.(2d) 759, at pages 763, 764, it is said:

"It is contended, however, that his being in a position of peril was the result of his own negligence. If so, he was not entitled to judgment.

"Counsel contend that Honaker did not have such control of his automobile that he could stop after he had passed the obstruction to his view and before he reached the track, and that, as a matter of law, this constituted contributory negligence. The evidence does not conclusively show that he could not have stopped had he concluded that that was the best thing to do. From the evidence on that subject, different conclusions might be drawn. In cases that required it, we have applied the rule contended for, but in those cases the facts were not the same as those in the case at bar. Recognizing that negligence cases differ widely in their facts, and that it is seldom that the facts in any two cases are the same, we have shown a disinclination in recent cases, to apply an inflexible standard of due care."

This seems to be far from going the length for which counsel contend. But, again, it is quite apparent that this and other Colorado cases cited by counsel were decisions promulgated in establishing the law before the Uniform Motor Vehicle Act of 1931 was enacted and would not therefore be controlling or persuasive in the matter of setting up a standard of conduct upon the highways as has now been fixed by statute.

■ Again, it is contended by counsel that, in cases originating in the state court and removed to the federal court, the decisions by the Supreme Court of the state in determining questions such as are here involved should control the federal court. I do not so understand the rule, and it would likewise seem rather strange that, if constitutional and statutory provisions of a state do not control a federal court a judge-made law would nevertheless be controlling.

In 28 USCA § 81, it is provided: "The district court of the United States shall, in all suits removed under the provisions of this chapter, proceed therein as if the suit had been originally commenced in said district court, and the same proceedings had been taken in such suit in said district court as shall have been had therein in said State court prior to its removal."

In Force v. Standard Silk Co. (C. C.) 160 F. 992, the decision of the court is reflected in the following excerpt from the syllabus: "When a case involving negligence is removed from a state to a federal court, unless the action is founded on a state statute such question is one of general law on which the courts of the United States will exercise an independent judgment." This case was af-firmed by the Circuit Court of Appeals of the Second Circuit in 170 F. 184.

In Williams v. Provident Life & Trust Co. (C. C. A.) 242 F. 417, at page 420, the following language is used: "This also meets the suggestion that the bill should not have been dismissed by the court below, but remanded to the state court, in which the suit was brought. It is concededly the duty of a federal court, in a case like this, to enforce the equitable rights conferred by a state statute, or to remand the cause; but in the absence of such a statute a federal court of equity is at full liberty to exercise its independent judgment uncontrolled by the decisions of state tribunals. Mathews Slate Co. v. Mathews (C. C.) 148 F. 490; Peters v. Equitable Life Assur. Soc. (C. C.) 149 F. 290."

Even in regard to the cases cited by counsel for plaintiffs as supporting the suggested rule, his opponents contend, and I think justly, that in recognizing a so-called state rule it was done upon the theory that such rule was in harmony with the federal rule and therefore recognized as persuasive, instead of controlling. For example, in Bassett. v. Delaware & Hudson Co., 62 F.(2d) 74 (C. C. A. 2), which involved an accident occurring in Vermont, it is plainly stated that the court followed the federal rule because the Goodman Case (275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645) is specifically adopted as the basis of the decision, followed by the words on page 77 of 62 F.(2d): "The Vermont authorities are plainly in accord."

■ As to the sufficiency of a demurrer to test the points raised, the court has no doubt. Where the facts as pleaded limit the range which proofs may take upon a trial, there would seem to be no practical reason why demurrers will not suffice to reach the end sought. It may be observed by reading the cases that the end is sometimes attained by demurrer, by motion for a directed verdict, or in other ways permissible by the rules of the court in which the cause is being presented. In the case of Brown v. Southern Railway Co. (Pennington v. Southern R. Co.) (C. C. A.) 61 F.(2d) 399, and Smith v. Southern Railway Co. (C. C. A.) 53 F.(2d) 186, 187, it is observed that almost the identical point here involved was disposed of on demurrers It seems to me to be a short, practical, and inexpensive way to all parties concerned to have the matter in issue decided in advance before great expense will be incurred in trials.

For the reasons stated, the several demurrers will be sustained, and an order may be

405

entered accordingly, allowing the plaintiffs thirty days from the date hereof within which to file amended complaints or to elect to stand upon the present complaints, and reserving to the defendant the right to take such action in the premises as it may be advised at the end of such period. Proper exceptions to the rulings on the demurrers may be reserved and allowed to plaintiffs.